**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-cv-22620-FAM

MARIO ECHEVARRIA, ESTHER SANCHEZ,
CONSUELO CUEVAS, and CARMEN
FLORIDO,

       Plaintiffs,

v.

EXPEDIA GROUP, INC., HOTELS.COM
L.P., HOTELS.COM GP, LLC, ORBITZ,
LLC, BOOKING.COM B.V., BOOKING
HOLDINGS INC.,

       Defendants.

_____/

**<u>SECOND AMENDED COMPLAINT FOR DAMAGES</u>**

For more than 100 years, the Cuevas family[1] owned waterfront property in Cayo Coco. Cayo Coco, being uninhabited, was used by the family and others as a recreational area for swimming, fishing, hunting, and for enjoying the many beaches on the island. Over the years, some limited commercial use was made of Cayo Coco for the production of charcoal, the raising of livestock, and the production of salt. But the Cuevas family's quiet use and enjoyment of their property came to an abrupt end when Fidel Castro seized power and established a communist government in Cuba, which confiscated their property and forced much of the family to flee their native country for the United States.

After seizing the Cayo Coco property from the Cuevas family, the Cuban government developed the island, and together with various hotel chains, including Accor S.A. ("Accor"), built a number of resorts. Among those resorts is the Pullman Cayo Coco Hotel ("Pullman Cayo Coco"). The defendants offer the Pullman Cayo Coco to Floridians[2] through their interactive websites, emails they send to Floridians, and through work in their Florida offices. Together, the Cuban government, the Expedia Defendants[3], and the Booking Defendants[4], have exploited and benefitted from the Cuevas Heirs' property for decades without their consent and without paying Cuevas Heirs—the rightful owners—any compensation whatever. The Cuevas Heirs now sue to right the defendants' unlawful trafficking in their property and for just compensation.

---

[1] Plaintiffs Mario Echevarria, Esther Sanchez, Consuelo Cuevas, and Carmen Florido (the "Cuevas Heirs") are the current heirs to Cayo Coco.
[2] "Floridians" as used in the Second Amended Complaint means any individual who has provided the defendants with a zip code indicating a home or billing address in Florida, or who visited the defendants' website with an IP address indicating that individual was located in Florida at the time the website was visited or at the time the IP address was captured, or who defendants otherwise were able to determine was located in Florida.
[3] Defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, and Orbitz, LLC will be collectively referred to as the "Expedia Defendants."
[4] Defendants Booking Holdings Inc. and Booking.com B.V. will be collectively referred to as the "Booking Defendants."

## THE ACTION

1.      The Cuevas Heirs sue the Expedia and Booking Defendants under the Cuban

Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act"), for

unlawful trafficking in their confiscated property in Cuba.

## THE PARTIES

*A.      Plaintiffs*

2.      Mario Echevarria has been a United States citizen since March 15, 1983, and is a

natural person who resides in Miami, Florida.

3.      Esther Sanchez, also known as Esther Echevarria, has been a United States citizen

since July 14, 1996, and is a natural person who resides in Miami, Florida.

4.      Consuelo Cuevas, also known as Consuelo Tuya, has been a United States citizen

since May 10, 1999, and is a natural person who resides in Miami, Florida.

5.      Carmen Florido, also known as Carmen Davis, has been a United States citizen

since September 29, 1996, and is a natural person who resides in Miami, Florida.

*B.      The Expedia Defendants*

6.      Defendant Expedia Group, Inc. ("Expedia")[5] is a Delaware corporation with its

principal place of business in Bellevue, Washington, and offices in Miami, Florida.

7.      Defendant Hotels.com L.P., an affiliate of Expedia, is a Texas limited partnership

with headquarters in Dallas, Texas.

---

[5] The Delaware corporation that plaintiffs identified as "Expedia, Inc." in the Corrected
Amended Complaint changed its named to "Expedia Group, Inc." in March of 2018. Here, the
inclusion of Expedia Group, Inc. is intended as a mere correction of the party's name to its
current name.

8.      Defendant Hotels.com GP, LLC, an affiliate of Expedia, is a Texas limited liability company with its headquarters in Bellevue Washington. Hotels.com GP, LLC is the general partner of Hotels.com L.P.

9.      Defendant Orbitz, LLC, an affiliate of Expedia, is a Delaware limited liability company with its headquarters in Chicago, Illinois.

## C.      *The Booking Defendants*

10.     Defendant Booking Holdings Inc. ("Booking Holdings") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

11.     Defendant Booking.com B.V. is a Dutch limited liability company based in Amsterdam, Netherlands, with its principal place of business in Amsterdam. Booking.com B.V. is a 100% owned and controlled subsidiary of Booking Holdings, which operates at its direction. Booking Holdings maintains day-to-day control of Booking.com B.V. and its basic operations. Booking.com B.V. operates the website Booking.com for the benefit of its 100% owner, Booking Holdings, has no corporate interest of its own and it's a mere instrumentality of Booking Holdings.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because this action arises under the LIBERTAD Act (22 U.S.C. § 6082) and the amount in controversy exceeds $50,000, excluding interest, costs, and attorneys' fees.

13.     The Court has personal jurisdiction over the Expedia and Booking Defendants under Fla. Stat. §§ 48.193(1)(a)(1), (2) and (6), and Fla. Stat. § 48.193(2) because they maintain and carry on continuous and systematic contacts with Florida, regularly transact business within Florida, have offices in Florida, regularly avail themselves of the benefits of their presence in

Florida, committed a tortious act within Florida, and caused injury within Florida by committing acts outside of Florida while engaging in solicitation within Florida, and are engaged in substantial and not isolated activity within this state.

14.    Defendants' websites are fully-interactive, have robust internet e-business capabilities, and are fully accessible in Florida. Floridians can readily access defendants' websites and are able to book hotel accommodations in Cuba at more than 6,500 hotels, including the Pullman Cayo Coco. The defendants' websites allow Floridians to browse hotels by, among other things, geographic location (including Cayo Coco), by hotel operator (including Accor), and by hotel name (including the Pullman Cayo Coco).

15.    Having located a hotel in Cuba on one of the defendants' websites, a Floridian is readily able to determine whether hotel rooms are available on the preferred dates, at what price and with what features (e.g., types of rooms, beds, views, etc.), and can reserve a room on defendants' websites using a U.S. credit card. But if a Floridian does not reserve a room after browsing on defendants' websites, the defendants will target Floridians by sending them emails with other hotel options in Cuba, including the Pullman Cayo Coco. E.g., on July 19, 2019, after Mr. Manuel Vazquez, a Floridian, searched for hotels in Cienfuegos, Cuba, on Booking.com, the Booking Defendants sent him an email inviting him to look at other hotels in Cienfuegos: "Manuel, Cienfuegos is calling your name."[6] On information and belief, both defendants targeted Floridians by sending them emails enticing them to book rooms at hotels in Cuba, including the Pullman Cayo Coco.

---

[6] *See* email dated July 19, 2019 from Booking.com to Manuel Vazquez, in Florida, offering reservations at various hotels in Cienfuegos, Cuba, attached as **Exhibit A**.

16.    The defendants promote their websites—and their interactive capabilities for the booking of rooms at Cuban hotels, including the Pullman Cayo Coco—on the internet to Floridians in the following ways:

a.    through their search engine optimization (SEO) efforts, including by developing titles and meta description tags to optimize the titles and "snippets" that appear on Google and other search engine results pages;

b.    through their follow-up emails to Floridians who have searched for accommodations in Cuba, including the Pullman Cayo Coco or other geographically proximate hotels; and

c.    through banner ads promoting popular destinations in Cuba that direct Floridians to additional information and booking of Cuban hotels, including the Pullman Cayo Coco.

17.    Defendants have taken many actions to promote hotels, including the Pullman Cayo Coco, to Floridians:

a.    maintain offices in Miami and Orlando. For example, at least one of the Expedia Defendants has an office at 701 Brickell Avenue for Expedia Group Media Solutions division. That office has had over one hundred (100) employees during the relevant time and offers marketing services relating to Latin America that permit the "geo-target[ing]" of digital ads "to origin cities in Florida," as more fully described below. Also, at least one of the Booking Defendants maintains offices in Miami, at 801 Brickell Avenue, and in Orlando, where it has

customer service centers whose relevant activities include receiving calls from Floridians about the Pullman Cayo Coco;[7]

      b.      are registered to do business in Florida and have been so for nearly a decade with respect to the Booking Defendants, and for more than twenty years for the Expedia Defendants;[8]

      c.      directly target Floridians for advertising, for example, through Expedia Group Media Solutions, using its touted ability to micro-target by geographic area;

      d.      send communications directly to Floridians, first soliciting stays at resorts in Cuba and, when hotel rooms are booked, later about those reservations, including about cancellations and other issues with the reservations;[9]

      e.      send follow-up communications to Floridians who browse hotels in Cuba on defendants' websites, but do not make reservations, soliciting and urging them to make reservations, including, on information and belief, reservations on the Pullman Cayo Coco;

      f.      configure their landing pages (that is, the web pages that are shown to users when they enter the defendants' websites) for Floridians who have searched for hotels in Cuba, including, on information and belief, the Pullman Cayo Coco, so that they direct users to it and other Cuba hotels related to their search; and

---

[7] *See* photographs of Expedia Group's office at 701 Brickell Avenue, attached as **Exhibit B**; photograph of the opening of Expedia Group's office at 701 Brickell Avenue on January 12, 2016, attached as **Exhibit C**; Local Business Tax Receipt for Expedia Inc., reflecting an office at 701 Brickell Avenue, attached as **Exhibit D**; Local Business Tax Receipt for Booking.com (USA) Inc., reflecting an office at 801 Brickell Avenue, attached as **Exhibit E**.

[8] *See* copy of the Florida Department of State, Division of Corporations registration for the Expedia Defendants, attached as **Composite Exhibit F**; copy of the Florida Department of State, Division of Corporations registration for Booking.com Customer Service Center (U.S.A.) Inc. and Booking.com (U.S.A.) Inc., attached as **Composite Exhibit G**.

[9] *See* email dated February 9, 2020 from by Booking.com to Manuel Vazquez, in Florida, offering reservations in various cities in Cuba, attached as **Exhibit H**.

g.      communicate with hotels in Cuba from Florida, including, on information and belief, with the Pullman Cayo Coco, regarding reservations booked on defendants' websites.

18.      On information and belief, as a result of defendants' efforts:

a.      Floridians have booked a substantial number of stays at the Pullman Cayo Coco through defendants' websites;

b.      defendants make a substantial number of sales to Floridians, including reservations at the Pullman Cayo Coco; and

c.      defendants receive significant revenues from their activities in Florida;

19.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (3).

## THE LIBERTAD ACT

20.      Title III of the LIBERTAD Act provides U.S. nationals whose property in Cuba had been confiscated by the communist Cuban government with a right of action against those who traffic, and benefit from trafficking, in that property. 22 U.S.C. §§ 6081-6085.

## FACTUAL ALLEGATIONS

### A.      *The Trafficked Property*

21.      The Cuevas family owned waterfront property (the "Trafficked Property") in Cayo Coco, an island off the North Coast of Cuba, near the city of Morón. The island, which spans 370 square kilometers, is bordered by Morón to the South, Cayo Romano to the East, the Atlantic to the North, and Cayo Guillermo to the West. It is connected to the Cuban "mainland" near Morón by a 17-km long causeway, and to the world at large by Jardines del Rey International Airport.

22.      The Trafficked Property, when inherited by Julian Cuevas and his wife Isabel Angulo from Isabel's father, was virgin property, undeveloped and reserved for the family's recreational use—swimming, fishing, hunting, and for enjoying the many beaches on the island.

8

23.     On the passing of Julian Cuevas in Cuba, in 1930, his interest in the Trafficked Property was distributed by will to his children, Julian Jr., Maria Teresa, Carmen, Emilio and Elvira.

24.     Julian Jr. died in 1936 unmarried and childless, Maria Teresa died in 1956 unmarried and childless. Their interest passed to their surviving siblings, Carmen and Elvira, and to Emilio´s children.

25.     Carmen died an American citizen in 2010. Upon her passing, her daughter Carmen Florido inherited her interest in the Trafficked Property.

26.     Emilio died in 1934 in Cuba, and his interest passed to his children, including his son Manuel Cuevas, Consuelo Cuevas' father.

27.     Manuel Cuevas died an American citizen in 1990. His interest in the Trafficked Property passed to his wife and children, including his daughter Consuelo Cuevas.

28.     Elvira Cuevas died in Cuba in 1959. She was predeceased by her husband Aureliano Echevarria, and survived by her two children, including her son Julian Echevarria, who inherited her interest in the Trafficked Property.

29.     Julian Echevarria died in 1987, and was survived by his wife and children, Aureliano, Carmen, and Mario Echevarria, who inherited his interest in the Trafficked Property.

30.     Aureliano died an American citizen in 1986. Upon his passing, his wife Esther Sanchez inherited his interest in the Trafficked Property.

31.     On August 16, 1960, the communist Cuban government confiscated the Trafficked Property from the Cuevas family. Thereafter, many of the family members, including the Cuevas Heirs, fled Cuba to the United States, where they lived ever since.

32.     Later, the Cuban government, together with foreign hotel operators, developed the Pullman Cayo Coco on the Trafficked Property.

33.     At the time of filing of this case, Floridians could reserve vacation packages at the Pullman Cayo Coco from the defendants' websites. The defendants solicit and accept reservations from U.S. residents for Cuban hotels, including, in large part, from Floridians.

**B.     *Succession Rights to the Trafficked Property***

34.     Since its confiscation, and as of the time of filing this lawsuit, the Cuevas Family and subsequently the Cuevas Heirs have been the rightful owners of the claim to the Trafficked Property being trafficked by defendants.

**C.     *The Expedia and Booking Defendants Have Trafficked the Trafficked Property Without Authorization and Without Compensating the Cuevas Heirs***

35.     The Cuevas Heirs have never given any sort of authorization to the defendants, and the defendants never paid—and the Cuevas Heirs never received—any compensation whatsoever for defendants' trafficking of the Trafficked Property.

36.     On August 6, 2019, the Cuevas Heirs informed defendants of their intent to commence an action unless defendants ceased to traffic the Trafficked Property. *See* **Composite Exhibit I**. Despite being on actual notice, defendants continued to market and make reservations at the Pullman Cayo Coco on their websites for their economic benefit.[10]

37.     The Cuevas Heirs were not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22

---

[10] More than thirty days after the Cuevas Heirs gave defendants notice of their intent to add them to this action on August 6, 2019, and before the filing of this Second Amended Complaint, it appears that defendants, in recognition of their liability, removed their listings for the Pullman Cayo Coco. Defendants are nonetheless liable because they trafficked the Cuevas Heirs' property within the last two years. *See* 22 U.S.C. § 6084.

U.S.C. § 1643, *et seq*.), because they were not U.S. citizens at the time the Trafficked Property was confiscated.

38.     The Trafficked Property has not been the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq*.).

39.     The Cuevas Heirs have been injured by defendants' trafficking in the Trafficked Properties without the permission of, and without paying compensation to, the Cuevas Heirs.

**D.     *The Expedia Defendants***

40.     Expedia is the corporate parent company of numerous brands. In fact, Expedia lists a total of 21 subsidiaries or affiliates, through which it maintains more than 200 travel booking sites across more than 70 countries, and through which it offers more than 1 million properties for rent.



https://www.expediagroup.com/about/

    41.    According to Expedia's most recent 10-K filing, the Expedia Defendants "make travel products and services available both on a stand-alone and package basis, primarily through the following business models: the merchant model, the agency model and the advertising model." Expedia Group, Inc., Annual Report (Form 10-K) (Feb. 7, 2019) at 6, available at

https://ir.expediagroup.com/static-files/6fe46568-4ba4-43c9-98ef-eda3591c6892 (last visited

Feb. 4, 2020).

> Under the merchant model, we facilitate the booking of hotel rooms, alternative
> accommodations, airline seats, car rentals and destination services from our travel
> suppliers and we are the merchant of record for such bookings. The majority of our
> merchant transactions relate to hotel bookings. Under the agency model, we
> facilitate travel bookings and act as the agent in the transaction, passing reservations
> booked by the traveler to the relevant travel provider. We receive commissions or
> ticketing fees from the travel supplier and/or traveler.
>
> *     *     *
>
> Under the advertising model, we offer travel and non-travel advertisers access to a
> potential source of incremental traffic and transactions through our various media
> and advertising offerings on trivago and our transaction-based websites.

*Id*. at 6.

42.     The Expedia Defendants all provide online booking services for hotels in Cuba,

including the Pullman Cayo Coco. For example, Expedia.com lists a total of 5,073 properties

available for rent throughout Cuba. *See* Screenshot of Expedia Mobile Application, attached as

**Exhibit J.** These properties include the Pullman Cayo Coco.

43.     On information and belief, many of the Expedia Defendants' customers

(including Floridians) travel to Cuba, and to the Pullman Cayo Coco in particular, for tourism,

which is not a permitted purpose of travel to Cuba under the U.S. Treasury Department

regulations, and is thus, not lawful travel.

44.     In addition to directly benefitting from the Trafficked Property by receiving

commissions or other fees for the booking of the Pullman Cayo Coco, the Expedia Defendants

also derive an indirect benefit from the Pullman Cayo Coco by receiving advertising revenues

driven by or related to their offering of the Pullman Cayo Coco.

**E.     *The Booking Defendants***

45.     Booking Holdings is the corporate parent company for a number of brands, including Booking.com, Kayak, Priceline, Agoda, Rentalcars.com, and OpenTable. Booking Holdings Annual Report (Form 10-K) (Feb. 19, 2020) at 1. Booking Holdings is the 100% owner of Booking.com B.V., as reflected in its Consolidated Financial Statement. *Id.* at Ex. 21.

46.     According to Booking Holdings, its "business is driven primarily by international results, which consist of the results of Booking.com, agoda, and Rentalcars.com and the international business of KAYAK and OpenTable*." Id.* "Booking.com is the world's leading brand for booking online accommodation reservations, based on room nights booked, with operations worldwide and headquarters in the Netherlands." *Id*. at 4. Booking Holdings' "international business (the substantial majority of which is generated by Booking.com) represented approximately 90% of [the Booking Defendants'] consolidated revenues." *Id*. at 2.

47.     The Booking Defendants operate under both an agency model and a merchant model:

- Agency revenues are derived from travel-related transactions where we do not facilitate payments from travelers for the services provided. We invoice the travel service providers for our commissions after travel is completed. Agency revenues consist almost entirely of travel reservation commissions.

- Merchant revenues are derived from travel-related transactions where we facilitate payments from travelers for the service provided, generally at the time of booking. Merchant revenues include travel reservation commissions and transaction net revenues (i.e., the amount charged to travelers less the amount owed to travel service providers) in connection with our merchant reservation services; credit card processing rebates and customer processing fees; and ancillary fees, including travel-related insurance revenues and certain global distribution system ("GDS") reservation booking fees. Substantially all merchant revenues are derived from transactions where travelers book accommodation reservations or rental car reservations.

*Id*. at 2. Under these models, along with advertising through KAYAK, Booking Holdings had revenues of $15.6 billion. *Id* at 4. 90% of that amount represents more than $13.5 billion

attributable to the operations of Booking.com. This revenue is reflected in Booking Holdings Consolidated Financial Statements. *Id* 63-109. On information and belief, all revenues earned by Booking Holdings' subsidiaries, including Booking.com B.V., flow directly to Booking Holdings, which has no independent business or independent revenues other than those of its subsidiaries.

48.      Defendant Booking.com B.V. provides online booking services for hotels in Cuba, including the Pullman Cayo Coco. For example, Booking.com lists a total of 5,793 properties available for rent throughout Cuba. *See* Screenshot of Booking.com, attached as **Exhibit K.**

49.      On information and belief, many of the Booking Defendants' customers (including Floridians) travel to Cuba, and to the Pullman Cayo Coco in particular, for tourism, which is not a permitted purpose of travel to Cuba under the U.S. Treasury Department regulations, and is thus not lawful travel.

50.      In addition to directly benefitting from the Trafficked Property by receiving commissions or other fees for the booking of the Pullman Cayo Coco, the Booking Defendants also derive an indirect benefit from the Pullman Cayo Coco by receiving advertising revenues driven by or related to their offering of the Pullman Cayo Coco.

51.      According to Booking Holdings, "[w]e connect consumers wishing to make travel reservations with providers of travel services around the world through our online platforms" and "[t]hrough one or more of our brands, consumers can: book a broad array of accommodations (including hotels, motels, resorts, homes, apartments, bed and breakfasts, hostels and other properties) . . . ." Booking Holdings Annual Report (Form 10-K) (Feb. 19, 2020) at 1. Booking Holdings does not conduct any of this business itself, but rather through its "brands," including,

primarily, Booking.com B.V. On information and belief, Booking.com B.V., the operator of the

booking.com website, acts as an agent of its 100% owner Booking Holdings Inc., which has

operational control over the day-to-day activities of Booking Holdings B.V., and whose

executives are compensated in part based on the performance of Booking.com B.V.

## **CAUSE OF ACTION**

### **Private Right of Action Under 22 U.S.C. § 6082(a)(1)**

52.     The Cuevas Heirs incorporate paragraphs 1 to 51 into this count.

53.     This claim is brought under Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

54.     Defendants are "persons" as defined by 22 U.S.C. § 6023(11).

55.     The Trafficked Property was confiscated by the communist Cuban government.

56.     Since the date the Trafficked Property was confiscated, the Cuevas Family, and

subsequently the Cuevas Heirs, have owned a claim to the Trafficked Property.

57.     The defendants have knowingly and intentionally used or benefitted, directly or

indirectly, from the confiscated Trafficked Property by offering, for economic benefit,

reservations at the Pullman Cayo Coco, which constitutes trafficking that violates Title III of the

LIBERTAD ACT.

58.     Defendants conducted this trafficking "without the authorization of any United

States national who holds a claim to the property" (22 U.S.C. § 6023(13)) in violation of Title III

of the LIBERTAD Act.

59.     Accordingly, the Cuevas Heirs are entitled to damages to be determined under 22

U.S.C. § 6082(a)(1)(A)(i), and 6082(a)(3)(C), along with attorneys' fees and costs under 22

U.S.C. § 6082(a)(1)(A)(ii).

60.     The Cuevas Heirs, in compliance with 22 U.S.C. §§ 6082 (a)(3)(B) and (a)(3)(D), provided notice to the defendants more than 30 days before joining them as defendants in this action. On information and belief, notwithstanding this notice, the defendants continued to traffic in the Pullman Cayo Coco after receiving the notice.

## PRAYER FOR RELIEF

WHEREFORE, the Cuevas Heirs demand a judgment against defendants that:

     i.     Awards actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

     ii.     Awards reasonable attorneys' fees and costs incurred in this action under 22 U.S.C. § 6082(a)(1)(A)(ii);

     iii.     Awards treble damages under 22 U.S.C. § 6082(a)(3)(C);

     iv.     Awards appropriate post-judgment interest; and

     v.     Grants all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Cuevas Heirs demand trial by jury on all issues so triable.

Dated: June 15, 2020

                                 Respectfully submitted,

                                 **RIVERO MESTRE LLP**
                                 2525 Ponce de León Blvd., Suite 1000
                                 Coral Gables, Florida 33134
                                 Telephone: (305) 445-2500
                                 Fax: (305) 445-2505
                                 E-mail: arivero@riveromestre.com
                                 E-mail: jmestre@riveromestre.com
                                 E-mail: arolnick@riveromestre.com
                                 E-mail: paguila@riveromestre.com
                                 E-mail: crodriguez@riveromestre.com

                    By:      s/ Andrés Rivero
                             ANDRÉS RIVERO

Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
M. PAULA AGUILA
Florida Bar No. 43135
CARLOS A. RODRIGUEZ
Florida Bar No. 91616

and

MANUEL VAZQUEZ
Florida Bar No. 132826
**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

## CERTIFICATE OF SERVICE

I certify that on June 15, 2020, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Noticed of Electronic Filing generated by CM/ECF.

s/ Andrés Rivero
ANDRÉS RIVERO