UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:19-cv-22620-FAM

———————————————————————

**Mario Echevarria**, **Esther Sanchez**,
**Consuelo Cuevas**, and **Carmen Florido**,

        Plaintiffs,

v.

**Expedia Group, Inc.**, **Hotels.com L.P.**,
**Hotels.com GP, LLC**, **Orbitz, LLC**,
**Booking.com B.V.**, and **Booking Holdings,
Inc.**,

        Defendants.

———————————————————————

# DEFENDANTS EXPEDIA GROUP, INC.,
## HOTELS.COM L.P., HOTELS.COM GP, LLC, AND ORBITZ, LLC'S
## MOTION TO DISMISS SECOND AMENDED COMPLAINT,
## <u>AND INCORPORATED MEMORANDUM OF LAW</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A.    The Helms-Burton Act ........................................................................... 2

    B.    Procedural History ................................................................................. 3

    C.    Plaintiffs' Current Allegations ................................................................. 4

    D.    The Expedia Entities ............................................................................. 5

ARGUMENT & AUTHORITIES .................................................................................................. 6

    A.    Lack of Personal Jurisdiction – No *Prima Facie* Case ................................ 6

        1.    Plaintiffs fail to allege a prima facie case of general jurisdiction. ....................... 7

        2.    Plaintiffs fail to allege a prima facie case of specific jurisdiction. .................... 8

            a.    Plaintiffs' allegations fail to satisfy the long-arm statute ....................... 9

            b.    Plaintiffs' allegations fail to satisfy due process. ................................. 11

    B.    Lack of Subject Matter Jurisdiction – No Standing ................................... 11

    C.    Failure to State a Claim ....................................................................... 13

        1.    Plaintiffs fail to plead ownership of an actionable claim to confiscated property under Title III ...................................................... 14

        2.    Plaintiffs fail to plead trafficking ............................................................ 16

            a.    Plaintiffs fail to plead that the Expedia Entities acted knowingly and intentionally. .................................................................. 16

            b.    The Lawful Travel Clause bars Plaintiffs' claims. ................................. 17

CONCLUSION ..................................................................................................................... 20

REQUEST FOR HEARING ....................................................................................................... 21

4815-1876-9345

## TABLE OF AUTHORITIES

**Cases**

*Access for the Disabled v. First Subway, LLC.,*
  No. 10-61131-CIV, 2010 WL 11596384 (S.D. Fla. Oct. 4, 2010) ............................................12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................................... 13, 14, 16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................................................13

*Benjamin v. CitiMortgage, Inc.,*
  No. 0:12-cv-62291-FAM, 2013 WL 1891284 (S.D. Fla. May 6, 2013) .......................................17

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.,*
  707 F. App'x 576 (11th Cir. 2017) .....................................................................................14

*BNSF Ry. Co. v. Tyrrell,*
  137 S. Ct. 1549 (2017) ......................................................................................................8

*Bochese v. Town of Ponce Inlet,*
  405 F.3d 964 (11th Cir. 2005) ...................................................................................... 11, 12

*Borislow v. Canaccord Genuity Group Inc.,*
  No. 9:14-cv-80134-KLR, 2014 WL 12580259 (S.D. Fla. June 27, 2014) ............................. 7, 11

*Bulpit, LLC v. DeCanio,*
  No. 2:13-CV-14119-KMM, 2013 WL 12126313 (S.D. Fla. June 7, 2013) ....................................9

*Camreta v. Greene,*
  131 S. Ct. 2020 (2011) .....................................................................................................18

*Carmouche v. Tamborlee Mgmt., Inc.,*
  789 F.3d 1201 (11th Cir. 2015) ...........................................................................................7

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ...................................................................................................... 7, 8

*Del Valle v. Trivago GmbH,*
  No. 19-cv-22619-RNS, 2020 WL 2733729 (S.D. Fla. May 26, 2020) ................................ 1, 9, 10

*Diaz v. Rood,*
  851 So. 2d 843, 845 (Fla. 2d DCA 2003) ...........................................................................12

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury,*
  606 F. Supp. 2d 59 (D.D.C. 2009) ............................................................................................19

*Fast SRL v. Direct Connection Travel LLC,*
  No. 1:17-cv-20900, 2018 WL 7822711 (S.D. Fla. Aug. 3, 2018) ................................................11

*Fish v. Kobach,*
  840 F.3d 710 (10th Cir. 2016) ....................................................................................................20

*Gables Ins. Recovery v. United Healthcare Ins. Co.,*
  39 F. Supp. 3d 1377 (S.D. Fla. 2013) ........................................................................................18

*Garcia- Bengochea v. Carnival Corp.,*
  No. 1:19-cv-21725, 2019 WL 4015576 (S.D. Fla. Aug. 26, 2019) .............................................18

*Gonzalez v. Amazon.com, Inc.,*
  No. 1:19-cv-23988-RNS, 2020 WL 1169125 (S.D. Fla. Mar. 11, 2020) .........................2, 15, 16

*Gonzalez v. Amazon.com, Inc.,*
  No. 1:19-cv-23988-RNS, 2020 WL 2323032 (S.D. Fla. May 11, 2020) ...............................2, 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) .....................................................................................................................8

*Havana Docks Corp. v. Carnival Corp.,*
  No. 1:19-cv-21724-BB (S.D. Fla. Aug. 28, 2019) ......................................................................18

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida,*
  641 F.3d 1259 (11th Cir. 2011) ..................................................................................................13

*In re Takata Airbag Products Liab. Litig.,*
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) ......................................................................................6, 8

*Jones v. Bock,*
  549 U.S. 199 (2007) ....................................................................................................................19

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury,*
  773 F.3d 243 (11th Cir. 2014) ...............................................................................................12, 13

*Kernel Records Oy v. Mosley,*
  No. 09-cv-21597, 2010 WL 2812565 (S.D. Fla. July 5, 2010) .....................................................9

*Layne v. Layne,*
  74 So. 3d 161 (Fla. 1st DCA 2011) ............................................................................................12

iv

*Lemoine v. Wong,*
    No. 0:17-cv-60099-UU, 2017 WL 5127592 (S.D. Fla. Mar. 29, 2017) ......................................10

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................................... 12, 13

*Madara v. Hall,*
    916 F.2d 1510 (11th Cir. 1990)........................................................................................... 6, 11

*Mata v. Melia Hotels Intl'l S.A.,*
    No. 1:19-cv-22529-CMA (S.D. Fla. Sept. 11, 2019) ......................................................4

*McCulloch v. Maryland,*
    17 U.S. 316 (1819) ...........................................................................................................20

*McCullough v. Bd. of Regents,*
    623 F. App'x 980 (11th Cir. 2015) ...................................................................................17

*McCullough v. Royal Caribbean Cruises, Ltd.,*
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) ............................................................................7

*Michel v. NYP Holdings, Inc.,*
    816 F.3d 686 (11th Cir. 2016) ..........................................................................................16

*Monroe v. CitiMortgage, Inc.,*
    No. 8:07-cv-0066-SCB-TGW, 2007 WL 1560194 (M.D. Fla. May 29, 2007) ...........17

*Nat. Resources Def. Council, Inc. v. Thomas,*
    838 F.2d 1224 (D.C. Cir. 1988) .......................................................................................20

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
    558 F.3d 1210 (11th Cir. 2009) ........................................................................................11

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
    297 F.3d 1182 (11th Cir. 2002) ................................................................................. 13, 14

*Prunty v. Arnold & Itkin LLP,*
    753 F. App'x 731 (11th Cir. 2018) ....................................................................................9

*Quiller v. Barclays American/Credit, Inc.,*
    727 F.2d 1067 (11th Cir. 1984)........................................................................................19

*R.W. v. Georgia Dept. of Educ.,*
    353 F. App'x 422 (11th Cir. 2009) ..................................................................................12

*Region 8 Forest Service Timber Purchasers Council v. Alcock,*
    993 F.2d 800 (11th Cir. 1993)...................................................................................11

*RG Golf Ware-house, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226 (M.D. Fla. 2019) .......................10

*RJR Nabisco, Inc. v. United States,*
    955 F.2d 1457 (11th Cir. 1992).................................................................................20

*Schaffer v. Weast,*
    546 U.S. 49 (2005)...................................................................................................18

*Sculptchair, Inc. v. Century Arts, Ltd.,*
    94 F.3d 623 (11th Cir. 1996)......................................................................................6

*Serra-Cruz v. Carnival Corp.,*
    400 F. Supp. 3d 1354 (S.D. Fla. 2019) .......................................................................9

*Slaihem v. Sea Tow Bahamas Ltd.,*
    148 F. Supp. 2d 1343 (S.D. Fla. 2001) .......................................................................6

*Snow v. DirecTV, Inc.,*
    450 F.3d 1314 (11th Cir. 2006)...........................................................................6, 8, 9

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016)..............................................................................................12

*Storms v. Haugland Energy Grp., LLC,*
    No. 9:18-cv-80334, 2018 WL 4347603 (S.D. Fla. Aug. 17, 2018)............................10

*Swann v. Sec'y, Georgia,*
    668 F.3d 1285 (11th Cir. 2012)................................................................................13

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.,*
    525 F.3d 1107 (11th Cir. 2008)................................................................................18

*U.S. v. $304,050.00 in U.S. Currency,*
    No. 2:12-cv-138-FTM-29, 2012 WL 4953126 (M.D. Fla. Oct. 17, 2012)..................14

*United Techs. Corp. v. Mazer,*
    556 F.3d 1260 (11th Cir. 2009)..................................................................................6

*Waite v. All Acquisition Corp.,*
    901 F.3d 1307 (11th Cir. 2018)...........................................................................8, 11

4815-1876-9345

*Walden v. Fiore,*
    571 U.S. 277 (2014)......................................................................................................6

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016) .........................................................................................7

*Wehunt v. Ledbetter,*
    875 F.2d 1558 (11th Cir. 1989).................................................................................13

*Williams Elec. Co., Inc. v. Honeywell, Inc.,*
    854 F.2d 389 (11th Cir. 1988).....................................................................................9

**Statutes**

22 U.S.C. § 6021 .................................................................................................................1

22 U.S.C. § 6023(13)(A) ...................................................................................................16

22 U.S.C. § 6023(13)(A)(ii) ........................................................................................16, 17

22 U.S.C. § 6023(13)(B)(iii) .......................................................................................16, 19

22 U.S.C. § 6082(a) .............................................................................................................2

22 U.S.C. § 6082(a)(1)(A) ...........................................................................................14, 18

22 U.S.C. § 6082(a)(3)(B) .................................................................................................17

22 U.S.C. § 6082(a)(4)(B) ...........................................................................................14, 15

22 U.S.C. § 6085(c) .............................................................................................................2

FLA. STAT. § 48.193(1)(a) .................................................................................................10

FLA. STAT. § 48.193(1)(a)(1) .........................................................................................9, 10

FLA. STAT. § 48.193(1)(a)(2) ...............................................................................................9

FLA. STAT. § 48.193(1)(a)(6) ...............................................................................................9

FLA. STAT. § 48.193(2).........................................................................................................7

**Other Authorities**

H.R. REP. NO. 104-468, at 44 (1996) (Conf. Rep.),
    *reprinted in* 1996 U.S.C.C.A.N. 558, 559, 1996 WL 97265 (emphasis added)............20

4815-1876-9395

*Incident to Employment*,"
    Black's Law Dictionary (11th ed. 2014) ..................................................................20

*Incident*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/incident (last
    visited Jan. 29, 2020) ......................................................................................................20

Restatement (Third) of Property: Wills & Donative Transfers § 2.1 (Am. Law Inst. 1999)
    .................................................................................................................................................12

## **Rules**

31 C.F.R. § 515.560(a) ...........................................................................................................19

31 C.F.R. § 515.572(a) ...........................................................................................................19

31 C.F.R. 515 ...........................................................................................................................19

31 CFR § 515.572(b) .............................................................................................................18

4815-1876-9345

### INTRODUCTION

Plaintiffs Mario Echevarria, Esther Sanchez, Consuelo Cuevas, and Carmen Florido (collectively, "Plaintiffs") claim that in 1960 the Cuban government confiscated virgin, undeveloped waterfront property on the island of Cayo Coco in Cuba (the "Property") that was owned by "the Cuevas family." According to Plaintiffs, the Property is now the site of the Pullman Cayo Coco Hotel. More than fifty years after the Cuban government allegedly confiscated the property, certain subsidiaries of defendant Expedia Group, Inc. ("Expedia Group")[1] began to offer travelers the ability to secure reservations at the Pullman Cayo Coco through web-based systems consistent with general and specific licenses issued by the United States government for offering travel-related services to Cuba.

Claiming to be the "heirs to Cayo Coco" and the rightful owners of "the claim to the Property," Plaintiffs now sue Expedia Group, Hotels.com L.P., Hotels.com, LLC, and Orbitz, LLC (collectively, the "Expedia Entities") for "trafficking" in confiscated property under Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021 *et. seq.* ("Helms-Burton Act" or "Act"). Plaintiffs seeks damages from the Expedia Entities equal to three times the value of the Property, plus attorneys' fees and costs. Plaintiffs' action fails, however, and must be dismissed for three independent reasons:

First, the Expedia Entities are not subject to personal jurisdiction in Florida. Despite Plaintiffs' most recent attempt to bolster their jurisdictional allegations, their latest complaint still fails to plead facts sufficient to make out a prima facie case of general or specific personal jurisdiction. Indeed, faced with nearly identical allegations, another court in this District recently held that the defendants in this case are not subject to personal jurisdiction in Florida. *Del Valle v. Trivago GmbH*, No. 19-cv-22619-RNS, 2020 WL 2733729, at *4 (S.D. Fla. May 26, 2020). For the same reasons the *Del Valle* court identified, this Court should dismiss Plaintiffs' complaint under Rule 12(b)(2) because they have failed to meet their burden to plead a prima facie case for personal jurisdiction.

Second, even if the Expedia Entities were subject to personal jurisdiction in Florida, this Court lacks subject matter jurisdiction over this case because Plaintiffs lack standing to bring this action under Article III of the Constitution. Plaintiffs lacks constitutional standing because they fail to present facts demonstrating that they have suffered an injury-in-fact related to the confiscation of the Property. Further, even if confiscation of the Property could be considered an injury-in-fact suffered by Plaintiffs, there is no nexus or causal connection between that alleged injury and the Expe-

---

[1] In their original and first amended complaints, Plaintiffs misidentified defendant Expedia Group, Inc. by its former name, "Expedia, Inc." (*See* Expedia Entities' Corp. Disclosure Statement ¶ 1, ECF No. 60.) Plaintiffs have now corrected that misnomer in their current complaint. (2d Am. Class Action Compl. 3 n.5.)

4815-1876-9345

dia Entities' offering reservations at a hotel in Cuba allegedly located on that Property. As such, this case must be dismissed pursuant to Rule 12(b)(1).

Third, even absent these twin jurisdictional defects, Plaintiffs' complaint should be dismissed because it fails to state a claim upon which relief can be granted. Plaintiffs' complaint suffers the same defects that another court in this District identified in recently dismissing a Helms-Burton case: Plaintiffs have not sufficiently alleged that they own an actionable ownership interest in the Property or that the Expedia Entities knowingly and intentionally engaged in activity related to confiscated property when they offered reservations at the Pullman Cayo Coco. *Gonzalez v. Amazon.com, Inc.*, No. 1:19-cv-23988-RNS, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020); *Gonzalez v. Amazon.com, Inc.*, No. 1:19-cv23988-RNS, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020). But that is not all. Plaintiffs' claim is also barred by the lawful-travel clause in the Act's definition of *traffics.*

BACKGROUND

## A.  The Helms-Burton Act

Congress passed the Helms-Burton Act in 1996. Title III of the Act—subject to certain limitations and definitions—grants U.S. nationals who "own[ ] the claim" to "property" confiscated by the Cuban government the right to sue and recover damages from any person who "traffics" in that property. 22 U.S.C. § 6082(a). The Act's definition of *traffics* covers an expansive range of conduct that includes not only transferring or holding an interest in confiscated property, but also "engag[ing] in a commercial activity using or otherwise benefiting from confiscated property" and "caus[ing], direct[ing], participat[ing] in, or profit[ing] from" conduct that otherwise constitutes trafficking. *Id.* § 6023(13)(A).

However, such conduct constitutes trafficking only if done "knowingly and intentionally." *Id.* Indeed, the scienter requirement is just one of many limitations that Congress included in the Act to limit its expansive scope and unprecedented extraterritorial application. Those limitations include:

- Limiting actions based on property confiscated before the Act's enactment date, March 12, 1996, to U.S. nationals who already owned a claim to that property as of that date. *Id.* § 6082(a)(4)(B).

- Excluding from the definition of *traffics* four categories of desirous conduct, including transactions and uses of property incident and necessary to lawful travel to Cuba. *Id.* § 6023(13)(B).

In addition to these and other specific limitations, the Act also empowers the President to suspend the right of action in Title III for successive six-month periods. *Id.* § 6085(c). Immediately after the Act became effective on March 12, 1996, President Clinton suspended Title III's right of action and renewed the suspension during the remainder of his presidency. Presidents Bush and

2

Obama did the same, as did President Trump for a time. But in 2019—more than twenty years after the Act's passage—the suspension of Title III was permitted to expire.

## B. Procedural History

On June 24, 2019, Plaintiffs filed this case as a putative class action against multiple defendants, including Booking.com B.V. (Class Action Compl., ECF No. 1.)[2] None of the Expedia Entities were named as defendants in the original complaint. (*Id.*) In early January 2020—more than six months after Plaintiffs filed their original complaint—Plaintiffs filed an amended complaint in this case in which they dropped all but one of the previously named defendants, and added the Expedia Entities and Booking Holdings, Inc. as defendants for the first time. (*See* Corrected Am. Compl., ECF No. 12.) The amended complaint also dropped Plaintiffs' class action allegations. (*See id.*)

On February 3, 2020, the Expedia Entities moved to dismiss the amended complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim. (Expedia Defs.' Mot. Dismiss, ECF No. 39.) Booking Holdings, Inc. and Booking.com B.V. (collectively, the "Booking Entities") moved to dismiss on the same grounds. (Booking Defs.' Mot. Dismiss, ECF No. 37.) Both motions to dismiss were fully briefed—including Plaintiffs' surreply concerning the Booking Entities' motion—by March 4, 2020. Almost three weeks later, the parties jointly asked the Court to stay all deadlines in the case but noted that they did not intend to stay consideration of the fully-briefed motions to dismiss. (Joint Mot. Stay ¶ 7, ECF No. 64.) The Court granted the joint motion. (Paperless Order, ECF No. 65.)

The stay ended on May 25, 2020. (*Id.*)[3] Three weeks later, and almost a year after Plaintiffs filed their original complaint in this case, Plaintiffs sought leave to amend their complaint again, cit-

---

[2] On the same day, Plaintiffs filed two additional actions against the same original defendants in which Plaintiffs made almost identical allegations as they do in this case concerning their purported claim to the island of Cayo Coco. *See* Class Action Compl., *Echevarria v. Trivago Gmbh* [hereinafter *Echevarria II*], No. 1:19-cv-22621-FAM (S.D. Fla. June 24, 2019), ECF No. 1; Class Action Compl. at 2 n.3, ¶¶ 34–36, *Del Valle v. Trivago GmbH*, No. 1:19-cv-22619-RNS (S.D. Fla. June 24, 2019), ECF No. 1. Three months later, Plaintiffs joined a fourth Helms-Burton case pending in this District, again making almost identical allegations about their claim to the island of Cayo Coco. *See* Am. Class Action Compl. at 3 n.5, ¶¶ 50–53, *Mata v. Melia Hotels Int'l S.A.*, No. 1:19-cv-22529-CMA (S.D. Fla. Dec. 6, 2019), ECF No. 5. Plaintiffs eventually dropped their claims from the *Mata* and *Del Valle* cases through subsequent amendments. *See* 2d Am. Compl., *Mata*, No. 1:19-cv-22529-CMA (S.D. Fla. Dec. 9, 2019), ECF No. 63; Corrected Class Action Compl., *Del Valle*, No. 1:19-cv-22619-RNS (S.D. Fla. July 1, 2019), ECF No. 5 (dropping Esther Sanchez, Consuelo Cuevas, and Carmen Florido as plaintiffs but retaining Mario Echevarria); Am. Class Action Compl., *Del Valle*, No. 1:19-cv-22619-RNS (S.D. Fla. Jan. 17, 2019), ECF No. 15 (dropping Mario Echevarria as plaintiff). And only Echevarria remains as a named plaintiff in *Echevarria II*. *See* Am. Class Action Compl., *Echevarria II*, No. 1:19-cv-22621-FAM (S.D. Fla. Jan. 30, 2020), ECF No. 11.

[3] The Court denied the parties' subsequent joint motion to extend the stay for an additional 60 days on June 3, 2020. (*See* Joint Mot. Extend Stay, ECF No. 67; Paperless Order, ECF No. 69.)

ing a need to add supposedly "recently-discovered facts" in response to the defendants' motions to dismiss. (Pls.' Mot. Leave Amend Compl. 1, ECF No. 73.) The Court granted Plaintiffs' motion (Paperless Order, ECF No. 74), and Plaintiffs filed their second amended complaint on June 15, 2020 (2d Am. Compl., ECF No. 75).

### C. Plaintiffs' Current Allegations

Plaintiffs allege that that "the Cuevas family"—the members of which Plaintiffs do not identify—owned undeveloped "waterfront property" on the island of Cayo Coco in Cuba (the "Property"). (2d Am. Compl. ¶¶ 21–22, ECF No. 75.) According to Plaintiffs, Julian Cuevas and his wife, Isabel Angulo, inherited the Property from Isabel's father, though the complaint does not say when or identify Isabel's father in any way. (*Id.* ¶ 22.) Plaintiffs allege that the Property was confiscated by the Cuban government on August 16, 1960 (*id.* ¶ 31), and that the Pullman Cayo Coco hotel was later built on the Property (*id.* ¶ 32).

Plaintiffs declare themselves "the current heirs to Cayo Coco" (*id.* at 2 n.1)[4] and assert that they are the "rightful owners of the claim to the...Property" (*id.* ¶ 34). Plaintiffs claim to be grandchildren, great grandchildren, or great grandchildren-in-law of Julian Cuevas, and assert that they acquired their respective alleged interests in the Property through various theories of inheritance traced to him. Plaintiffs allege that Julian Cuevas's interest in the Property (an interest whose contours and characteristics the complaint does not describe) was distributed by will to his five children after his death in 1930. (*Id.* ¶ 23.) Notably, the complaint does not describe the interests created by the distribution in any way. For example, it does not state whether Julian Cuevas's children became joint tenants with equal shares in the Property (and corresponding rights of survivorship) or tenants in common with unequal shares in the Property.

Both plaintiff Mario Echevarria's and plaintiff Esther Sanchez's theories of succession flow through Julian Cuevas's daughter Elvira Cuevas. (*Id.* ¶¶ 28–30.) Plaintiffs allege that Elvira Cuevas died in 1959 and was survived her two children, one of whom was Julian Echevarria. (*Id.* ¶ 28.) Although Plaintiffs' suggest that both children inherited Elvira's interest in the Property, it does not provide the name of Elvira's other child or describe the nature of the interest that each child supposedly inherited. (*See id.*) Plaintiffs then allege that Julian Echevarria died in 1987 "and was survived by his wife and children, Aureliano, Carmen, and [plaintiff] Mario Echevarria, who inherited his interest in the...Property." (*Id.* ¶ 29.) The complaint does not describe the interests that each of Julian Echevarria's heirs inherited, explain how they inherited those interests (i.e., through will or intestate

---

[4] A prior version of a complaint Plaintiffs filed in another Helms-Burton case identifies several other "heirs to Cayo Coco": Evelio Angulo Ramos, Silvia Angulo Ramos, Yoan Arturo Angulo Ledon, and Martha L. Garcia Angulo. *See* Am. Class Action Compl., *Mata v. Melia Hotels Int'l S.A.*, No. 1:19-cv-22529-CMA (S.D. Fla. Sept. 11, 2019), ECF No. 5.

succession), or state when each of them inherited his or her alleged interest (e.g., if all inherited their interests simultaneously upon his death or if his wife inherited his entire interest upon his death and then his children inherited their interests after her death).

The complaint then states that Julian Echevarria's son Aureliano (plaintiff Mario Echevar-ria's brother) died in 1986, at which point his wife, plaintiff Esther Sanchez, allegedly inherited Aure-liano's interest in the Property. (*Id.* ¶ 30.) Again, the complaint does not describe the interest that Esther Sanchez allegedly inherited or state how she allegedly inherited it. Nor does the complaint explain how Aureliano, who died in 1986, could have inherited anything from Julian Echevarria, who allegedly died the following year. (*Id.* ¶ 29.)

Regarding plaintiff Consuelo Cuevas, her alleged theory of succession derives from Julian Cuevas's son Emilio, who allegedly died in Cuba in 1934. (*Id.* ¶ 26.) Plaintiffs allege that Emilio's in-terest passed to his children, including his son Manuel Cuevas. (*Id.*) According to the complaint, Ma-nuel Cuevas died in 1990, and his interest in the Property "passed to his wife and children, including his daughter Consuelo Cuevas." (*Id.* ¶ 27.) As with the allegations concerning the purported Eche-varria inheritance, the complaint does not describe the interest in the Property inherited by Manuel Cuevas' heirs, explain how Consuelo Cuevas inherited that interest (i.e., through will or intestate suc-cession), or state when she actually inherited her alleged interest (i.e., upon her father's death or at some later time, such as after her mother or one of her siblings died).

As for plaintiff Carmen Florido, the complaint states that she inherited her alleged interest in the Property from her mother, also named Carmen, who died in 2010 and was one of Julian Cue-vas's five children. (*Id.* ¶ 25.) Once again, the complaint lacks any allegations describing the contours or nature of the interest Florido allegedly inherited.

Plaintiffs allege that "[t]he defendants solicit and accept reservations from U.S. residents, in-cluding, in large part, from Floridians." (*Id.* ¶ 33.) According to the complaint, at the time Plaintiffs filed this case, "Floridians could reserve vacation packages at the Pullman Cayo Coco from the de-fendants' websites." (*Id.*) Plaintiffs also allege, however, that the Expedia Entities stopped offering reservations at the Pullman Cayo Coco after receiving a letter from Plaintiffs' counsel that, according to the complaint, informed the Expedia Entities of Plaintiffs' intent to commence an action against them unless they "ceased to traffic in the…Property." (*Id.* ¶ 36 & n.10.) Nevertheless, they claim that "[t]he defendants have knowingly and intentionally used or benefitted, directly or indirectly, from the confiscated…Property" and therefore "traffick[ed]" in the Property under Title III, by "offering, for economic benefit, reservations at the Pullman Cayo Coco." (*Id.* ¶ 57.)

## D. The Expedia Entities

Expedia Group is a Delaware corporation with its principal place of business in Washington. (*Id.* ¶ 6.) Plaintiffs describe Expedia Group as the corporate parent company for a number of

brands that, together, maintain numerous "travel booking sites" that offer travelers the ability to book hotel rooms and other travel products and services. (*Id.* ¶ 40.) Plaintiffs allege that the other Expedia Entities are affiliates of Expedia Group, and Plaintiffs admit that none of the Expedia Entities is organized or has its principal place of business in Florida. (*Id.* ¶¶ 7–9.)

**ARGUMENT & AUTHORITIES**

### A.  Lack of Personal Jurisdiction – No *Prima Facie* Case

Determining whether non-resident defendants, such as the Expedia Entities, are subject to personal jurisdiction is a threshold issue that a court must decide before any other matter. *Madara v. Hall*, 916 F.2d 1510, 1513–14 (11th Cir. 1990) ("The court should have addressed the personal jurisdiction question first."). The analysis has two parts. *Id.* First, the Court determines whether Florida's long-arm statute provides a basis for personal jurisdiction. *Slaihem v. Sea Tow Bahamas Ltd.*, 148 F. Supp. 2d 1343, 1349 (S.D. Fla. 2001) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Second, if the long-arm statute is satisfied, then the Court determines whether the exercise of personal jurisdiction comports with due process. *Id.* "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara*, 916 F.2d at 1514.

The Supreme Court has recognized two types of personal jurisdiction: specific and general. General personal jurisdiction—or "all purpose" jurisdiction—"permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014) ("'[G]eneral' or 'all purpose' jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit…."). Specific personal jurisdiction—or "case-linked" jurisdiction—"depends on an affiliation between the forum and the underlying controversy (i.e., an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (internal quotations and alterations omitted); *accord Madara*, 916 F.2d at 1516 n.7 ("Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action.").

Plaintiffs bear the burden of "alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."). Conclusory allegations are insufficient to make out a prima facie case of personal jurisdiction. *In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d 1101, 1142 (S.D. Fla. 2019) (Moreno, J.) ("[C]ourts in the Eleventh Circuit have repeatedly declined to exercise specific jurisdiction over a nonresident defendant on the basis of generalized and conclusory allegations…." (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006))). If the complaint lacks "properly pleaded facts" establishing a

6

prima facie case, "a defendant wishing to properly challenge such a legally insufficient assertion of jurisdiction need not do anything more than file a simple (unsupported) motion" without affidavits or other materials. *Borislow v. Canaccord Genuity Grp. Inc.*, No. 9:14-cv-80134-KLR, 2014 WL 12580259, at *5 (S.D. Fla. June 27, 2014) (internal quotations omitted).

Here, as in *Del Valle*, Plaintiffs have failed to plead sufficient facts to make out a prima facie case of general or specific personal jurisdiction, and Plaintiffs' complaint should therefore be dismissed under Rule 12(b)(2).

### 1. Plaintiffs fail to allege a prima facie case of general jurisdiction.

The general-jurisdiction provision of Florida's long-arm statute —which applies to defendants who engage in "substantial and not isolated activity" within Florida, FLA. STAT. § 48.193(2)— "extends to the limits on personal jurisdiction" under the Due Process Clause. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). Therefore, to determine whether a district court has general jurisdiction, a court "need only determine whether [its] exercise of jurisdiction over [the defendant] would exceed constitutional bounds." *Id.* (internal quotation marks omitted).

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotations omitted). For a corporation,[5] the "paradigm all-purpose forums" for general jurisdiction are the corporation's "place of incorporation and principal place of business." *Id.* A court outside of these paradigm forums may assert general jurisdiction over a foreign corporation only when the corporation's affiliations with the State in which suit is brought are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19). To satisfy that narrow exception, a defendant's activities in the forum state must "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205.

Here, neither of the "paradigm all-purpose forums" support general jurisdiction in Florida because, as Plaintiffs allege, none of the Expedia Entities is organized or has its principal place of business in Florida. (2d Am. Compl. ¶¶ 6–9.) And Plaintiffs fail to allege any facts establishing that the Expedia Entities carry on operations in Florida that so closely approximate the Expedia Entities' places of incorporation or principal places of business to render them "at home" in Florida. As an initial matter, Plaintiffs' conclusory recitations of jurisdictional buzz words and the long-arm provision governing general jurisdiction—i.e., that the Expedia Entities "maintain and carry on continu-

---

[5] The same standard for general jurisdiction applies to non-corporate entities. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) (describing the *Daimler* test as applicable to "entities"); *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1344 (S.D. Fla. 2017) (applying the *Daimler* standard to a limited liability company).

ous and systematic contacts with Florida, regularly transact business within Florida,… regularly avail themselves of the benefits of their presence in Florida,…and are engaged in substantial and not isolated activity within the state" (*id.* ¶ 13)—are insufficient to make out a prima facie case of personal jurisdiction. *See Snow*, 450 F.3d at 1318; *In re Takata*, 396 F. Supp. 3d at 1142.

Nor do Plaintiffs' few factual allegations establish that any of the Expedia Entities is at home in Florida. Plaintiffs allege that Floridians (like residents of every other state) could access the "Expedia…Entities' websites" to search for and book reservations at the Resorts, and could view or receive alleged search engine "snippets," "follow-up emails," and "banner ads" regarding the ability to book hotel rooms in Cuba. (2d Am. Compl. ¶¶ 14–16.) Plaintiffs also allege that "at least one of the Expedia [Entities]" has an office in Miami (*id.* ¶ 17(a)), the Expedia Entities are registered to do business in Florida (*id.* ¶ 17(b)), and, on information and belief, "defendants make a substantial number of sales to Floridians" and "receive significant revenues from their activities in Florida" (*id.* ¶ 18). Even accepting these allegations as true,[6] they do not even come close to establishing general jurisdiction. At best, they show that the Expedia Entities conduct significant business in Florida. But "even substantial, continuous, and systematic business is insufficient to make a company at home in the state." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 1384 (2019); *accord BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (explaining that "in-state business…does not suffice to permit the assertion of general jurisdiction…."); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) ("A corporation's continuous activity of some sorts within a state…is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." (internal quotations omitted)). And Plaintiffs fail to allege any facts suggesting that Florida is "a surrogate" place of incorporation of principal place of business for any of the Expedia Entities. *Waite*, 901 F.3d at 1318 (quoting *Daimler*, 571 U.S. at 130 n.8). Absent such allegations, Plaintiffs fail to make out a prima facie case of general jurisdiction.

### 2. Plaintiffs fail to allege a prima facie case of specific jurisdiction.

Plaintiffs also fail to allege facts sufficient to make out a prima facie case of specific jurisdiction under either Florida's long-arm statute or the Due Process Clause.

---

[6] Because Plaintiffs' allegations are insufficient to make out a prime facie case even if accepted as true, the Expedia Entities have not submitted affidavits contesting these facts at the motion to dismiss stage. However, lest Plaintiffs' counsel contend (as they have in other Helms-Burton cases) that challenging the legal sufficiency of allegations without offering contrary evidence at the motion to dismiss stage amounts to some sort of admission, the Expedia Entities hereby make clear that they do not admit any of Plaintiffs' allegations and reserve the right to deny them.

### a.  Plaintiffs' allegations fail to satisfy the long-arm statute.

"Florida's long-arm statute is to be strictly construed." *Serra-Cruz v. Carnival Corp.*, 400 F.
Supp. 3d 1354, 1358 (S.D. Fla. 2019). Plaintiffs rely on three provisions in Florida's long-arm stat-
ute—§ 48.193(1)(a)(1), § 48.193(1)(a)(2), and § 48.193(1)(a)(6)—that provide for personal jurisdic-
tion over a nonresident corporation "for any cause of action arising from" (1) "[o]perating, conduct-
ing, engaging in, or carrying on a business or business venture in [Florida] or having an office or
agency in [Florida]," (2) "[c]ommitting a tortious act within [Florida]," and (6) "[c]ausing injury to
persons or property within [Florida] arising out of an act or omission by the defendant outside
[Florida], if, at or about the time of the injury…defendant was engaged in solicitation or service ac-
tivities within [Florida]." FLA. STAT. §§ 48.193(1)(a)(1), (1)(a)(2), (1)(a)(6). Plaintiffs have not alleged
facts creating jurisdiction under any of those three provisions. Indeed, Plaintiffs' allegations are al-
most identical to those made by the plaintiffs in *Del Valle v. Trivago GmbH*, No. 1:19-cv-22619, 2020
WL 2733729 (S.D. Fla. May 26, 2020). Like the court in *Del Valle*, this Court should dismiss this case
for failure to plead a prima facie case of specific jurisdiction under the long-arm statute. *Id.* at *2–3.

**First**, the Expedia Entities' alleged conduct does not fit within any of the long-arm provi-
sions Plaintiffs cite. For starters, personal jurisdiction under § 48.193(1)(a)(6) "applies only when a
defendant's out of state actions cause personal injury or damage to physical property in the State of
Florida." *Snow*, 450 F.3d at 1318. Plaintiffs do not allege any personal injury or damage to real prop-
erty in Florida, so personal jurisdiction does not attach under § 48.193(1)(a)(6). *See id.*; *Prunty v. Ar-
nold & Itkin LLP*, 753 F. App'x 731, 735-36 (11th Cir. 2018) ("[J]urisdiction is not proper under
§ 48.193(1)(a)(6) because [plaintiff] has alleged only economic injuries.").

Plaintiffs likewise do not allege any facts showing that the Expedia Entities "commit[ed] a
tortious act within [Florida]" under § 48.193(1)(a)(2). *See Del Valle*, 2020 WL 2733729, at *3 (declin-
ing to find jurisdiction under § 48.193(1)(a)(2)). For that provision to apply, the defendant must have
"committed a substantial aspect of the alleged tort in Florida," so that the defendant's Florida activi-
ties "were essential to the success of the tort." *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389,
394 (11th Cir. 1988) (internal quotations and alterations omitted). Plaintiffs do not allege any con-
duct by the Expedia Entities in Florida "essential to the success of the tort." *Id.* Further, "[i]n cases
where the Eleventh Circuit applied [§ 48.193(1)(a)(2)] to foreign torts causing injury within Florida,
that conduct was **directed at** Florida residents, corporations, or property, and the harm was felt ex-
clusively or primarily in Florida." *Bulpit, LLC v. DeCanio*, No. 2:13-CV-14119-KMM, 2013 WL
12126313, at *5 (S.D. Fla. June 7, 2013) (emphasis added) (quoting *Kernel Records Oy v. Mosley*, No. 09-
cv-21597, 2010 WL 2812565, at *5 (S.D. Fla. July 5, 2010)). Although Plaintiffs allege that Floridians
could access the Expedia Entities' websites and certain materials allegedly promoting Cuba-related
offerings on the websites (2d Am. Compl. ¶¶ 14–17), Plaintiffs make no allegations suggesting that

the Expedia Entities' conduct was directed or targeted specifically at Floridians, as opposed to residents any other state, much less that the alleged harm was felt exclusively or primarily in Florida. For example, Plaintiffs allege that the defendants sent various emails and communications to Floridians who search for or book hotels in Cuba, but they do not allege that such emails and communications were not sent to residents of other states who search for or book such hotels. (*See id.* ¶¶ 16–17.) Likewise, although Plaintiffs allege that Expedia Media Solutions has the capability to "geo-target" or "micro-target by geographic area," they do not allege that any ads for the Pullman Cayo Coco or other Cuban hotels were actually geo-targeted to Floridians. (*See id.*) Thus, as the court held in *Del Valle*, Plaintiffs fail to allege a prima facie case under § 48.193(1)(a)(2). *Del Valle*, 2020 WL 2733729, at *3.

Nor do Plaintiffs allege any facts showing that the Expedia Entities are "operating, conducting, engaging in, or carrying on a business or business venture" in Florida. FLA. STAT. § 48.193(1)(a)(1). Floridians' ability to access the Expedia Entities' websites, where users allegedly could search for and book reservations at the Resorts, or receive other materials related to those websites does not constitute doing business in Florida under § 48.193(1)(a)(1). *See RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019) ("[A]lthough Defendant operates an interactive website that is accessed daily by potential and actual Florida customers, the Court finds that only amounts to doing business as if in Florida, which is insufficient under the plain text of [Section 48.193(1)(a)(1)]." (internal quotation marks and alterations omitted)); *see also Storms v. Haugland Energy Grp., LLC*, No. 9:18-cv-80334, 2018 WL 4347603, at *8 (S.D. Fla. Aug. 17, 2018) ("[I]t is well settled that…maintaining a website accessible in Florida…is insufficient to satisfy Section 48.193(1)(a)(1)." (internal quotation marks omitted)), *report and recommendation adopted,* No. 9:18-cv-80334-BB, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018); *Lemoine v. Wong*, No. 0:17-cv-60099-UU, 2017 WL 5127592, at *4 (S.D. Fla. Mar. 29, 2017) ("[A] website accessible in Florida, standing alone, is insufficient to satisfy Section 48.193(1)(a)(1)."). Nor does being registered to do business in Florida or allegedly deriving "significant revenues from…activities in Florida" suffice. *See RG Golf Warehouse*, 362 F. Supp. 3d at 1236 (holding that the fact that seven percent of defendant's sales were made to Florida customers was insufficient to confer jurisdiction under § 48.193(1)(a)(1)); *Del Valle*, 2020 WL 2733729, at *3.

**Second**, even if the Expedia Entities' alleged activity could constitute "committing a tortious act" or "carrying on a business" in Florida, Plaintiffs still fail to satisfy the long-arm statute because their cause of action does not arise from the Expedia Entities' purportedly offering, soliciting, and accepting reservations from Florida residents. The long-arm provisions on which Plaintiffs rely apply only when the plaintiff's cause of action arises from the defendant's Florida contacts. FLA. STAT. § 48.193(1)(a) ("A person…submits…herself…to the jurisdiction of the courts of this state for any cause of action **arising from** any of the following acts…" (emphasis added)). This requires

"a nexus between the alleged causes of action" and the defendant's alleged conduct. *Fast SRL v. Direct Connection Travel LLC*, No. 1:17-cv-20900, 2018 WL 7822711, at *5 (S.D. Fla. Aug. 3, 2018). Plaintiffs base their Title III cause of action on the allegation that the Expedia Entities trafficked "by offering, for economic benefit, reservations at the Pullman Cayo Coco." (2d Am. Compl. ¶ 57.) Assuming *arguendo* that merely offering reservations at the Pullman Cayo Coco constitutes trafficking under Title III, the fact that residents of Florida (like residents of every other state) could make such reservations is hardly essential to Plaintiffs' cause of action. Indeed, the location of potential travelers does not affect the merits of Plaintiffs' cause of action at all and therefore cannot support specific jurisdiction under the Florida long-arm statute.

### b. Plaintiffs' allegations fail to satisfy due process.

Plaintiffs also fail to show a prima facie case for specific jurisdiction under the Due Process Clause. For the exercise of specific jurisdiction to comport with due process, "the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009); *Madara*, 916 F.2d at 1517. A cause of action "arises out of or relates to" a defendant's activity in a state "only if the activity is a 'but-for' cause of the tort." *Waite*, 901 F.3d at 1314. As just explained, Plaintiffs' theory of liability rests merely on the fact that the Expedia Entities offered reservations for the Pullman Cayo Coco. That Florida residents were among those who could book such reservations is not a but-for cause of Plaintiffs' cause of action; indeed, the residency of travelers has nothing to do with the Expedia Entities' alleged liability at all.

Because Plaintiffs have not alleged facts creating personal jurisdiction (whether general or specific) under either the Florida long-arm statute or the Due Process Clause, the Court should dismiss this case for lack of personal jurisdiction under Rule 12(b)(2). *See Borislow*, 2014 WL 12580259, at *5.

### B. Lack of Subject Matter Jurisdiction – No Standing

The Court should also dismiss this case under Rule 12(b)(1) because Plaintiffs lack standing under Article III of the United States Constitution ("Article III"). *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993) ("Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)."). "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quotations and alterations omitted). Because Article III standing is a constitutional limitation on the jurisdiction of federal courts, "Congress cannot erase Article III's standing re-

11

quirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016).

The plaintiff bears the burden of meeting the "irreducible constitutional minimum" of standing under Article III by establishing three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). First, the plaintiff must establish that he suffered an "injury in fact." *Id.* at 560. Second, "there must be a causal connection between the injury and the conduct complained of." *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo*, 136 S. Ct. at 1547. At the pleadings stage, this requires the plaintiff to "clearly…allege facts demonstrating each element." *Id.* (internal quotation marks omitted). Conclusory allegations are insufficient. *R.W. v. Georgia Dept. of Educ.*, 353 F. App'x 422, 423 (11th Cir. 2009) (affirming dismissal when the plaintiff's standing allegations "were wholly conclusory and supported by no facts"); *Access for the Disabled v. First Subway, LLC.*, No. 10-61131-CIV, 2010 WL 11596384, at *2 (S.D. Fla. Oct. 4, 2010) (explaining that the plaintiff's "conclusory allegation" of injury was "insufficient to establish the required element of injury-in-fact that is needed to demonstrate standing"). "If the plaintiff fails to meet its burden, [the] court lacks the power to create jurisdiction by embellishing a deficient allegation…." *Bochese*, 405 F.3d at 976.

Plaintiffs fail to allege facts demonstrating the first or second elements of standing. As to the first, injury-in-fact, a plaintiff must allege facts showing "an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite." *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014). Here, the Plaintiffs' claims stem from the Cuban government's alleged confiscation of the Property. (2d Am. Compl. ¶ 31.) Although that confiscation may constitute a concrete and particularized injury to individuals from whom the property was confiscated, Plaintiffs' own allegations show that they did not own any interest in the Properties at the time of confiscation; rather, they "subsequently" became owners of claims to the Properties by allegedly inheriting those claims from one of their parents. (*Id.* ¶¶ 25, 27, 29, 30, 34.) When the Property was confiscated, Plaintiffs had, at best, a possibility to one day inherit the Properties. But "the possibility that a person will inherit property from an ancestor is but an expectancy and not an interest in property." *Layne v. Layne*, 74 So. 3d 161, 164 (Fla. 1st DCA 2011) (emphasis added) (quoting *Diaz v. Rood*, 851 So. 2d 843, 845 (Fla. 2d DCA 2003)); *see also* RESTATEMENT (THIRD) OF PROPERTY: WILLS & DONATIVE TRANSFERS § 2.1 (AM. LAW INST. 1999) ("Before the decedent's death, a potential heir has no property interest but merely an 'expectancy' (an inchoate interest) in the decedent's intestate estate.") Nor do Plaintiffs allege facts showing that they have any rights to the Property today beyond mere conclusory statements.

Even if confiscation of the Property from Plaintiffs' ancestors almost sixty years ago could constitute a concrete injury to Plaintiffs, Plaintiffs also fail to satisfy the second, causation element

of constitutional standing. To satisfy that element, a plaintiff must allege facts demonstrating a "nexus" or "causal connection" between the plaintiff's injury and the defendant's conduct. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011); *Wehunt v. Ledbetter*, 875 F.2d 1558, 1566–67 (11th Cir. 1989). That is, the plaintiff must show that "[his] alleged injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Kawa*, 773 F.3d at 247 (quoting *Lujan*, 504 U.S. at 560). Thus, a plaintiff lacks standing when an "independent source" caused the plaintiff to suffer injury. *See, e.g.*, *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012).

Here, Plaintiffs fails to allege any "causal connection" between the Expedia Entities' challenged conduct—i.e., "offering, for economic benefit, reservations at the Pullman Cayo Coco" (2d Am. Compl. ¶ 57)—and the alleged confiscation of the Property. And for good reason: the Expedia Entities "played no role" in bringing about that alleged injury. *Kawa*, 773 F.3d at 247. That alleged injury occurred almost sixty years **before** the Expedia Entities' alleged conduct (and almost forty years before Expedia came into existence) and was caused by the Cuban government. After all, Plaintiffs do not offer any allegations suggesting that the Property would not remain "confiscated" or that they would otherwise be in a different position if the Expedia Entities had not "offer[ed], for economic benefit, reservations at the Pullman Cayo Coco." Because Plaintiffs' claimed injury was "directly caused by a third party who is not a party to the lawsuit," *Wehunt*, 875 F.2d at 1567, and would have occurred "regardless of" the Expedia Entities' actions, *Swann*, 668 F.3d at 1289, Plaintiffs lack standing to bring this action against the Expedia Entities.

## C. Failure to State a Claim

Even without these twin jurisdictional defects, Plaintiffs' complaint should be dismissed for failure to state a claim because Plaintiffs fail to plead facts showing that (1) they own an actionable claim to the Property or (2) the Expedia Entities trafficked in the Property. Under Rule 12(b)(6), a complaint should be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, meaning that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. And while the Court must accept a plaintiff's well-pleaded facts as true, it need not accept "conclusory allegations, unwarranted deductions of fact[]," *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), or "legal conclusion[s] couched as…factual allegation[s]," *Twombly*, 550 U.S. at 555 (quotation omitted).

13

### 1. Plaintiffs fail to plead ownership of an actionable claim to confiscated property under Title III.

To have a cause of action under Title III, one must own a claim to property confiscated by the Cuban government. 22 U.S.C. § 6082(a)(1)(A). Further, where, as here, the property in question was allegedly confiscated before March 12, 1996 (the Act's enactment date), the plaintiff must have acquired his or her claim to the property before that date in order to have a cause of action under Title III. *Id.* § 6082(a)(4)(B). Here, Plaintiffs fail to adequately allege that either requirement is met.

**First**, Plaintiffs fail to adequately allege that they own claims to the Property. Plaintiffs describe themselves as "the current heirs to Cayo Coco," and that they "inherited" their interests in the Property and "subsequently" became "the rightful owners of the claim to the Property." (2d Am. Compl. 2 n.1, ¶¶ 25, 27, 29, 30, 34.) But these are mere conclusory allegations. *See Iqbal*, 556 U.S. at 678; *Oxford Asset Mgmt.*, 297 F.3d at 1188; *Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 580 (11th Cir. 2017) (holding that the plaintiff failed to adequately allege that it owned certain timber and mineral rights because, beyond a conclusory assertion of ownership, "the Complaint contains no factual support for the allegation that the resources at issue are actually owned by Plaintiff"); *U.S. v. $304,050.00 in U.S. Currency*, No. 2:12-cv-138-FTM-29, 2012 WL 4953126, at *2 (M.D. Fla. Oct. 17, 2012) ("Claimant's assertion that he is 'the True and Rightful owner of' the property is a conclusory allegation and is not entitled to the presumption of truthfulness."). Despite having three opportunities to plead their claims, Plaintiffs' complaint still lacks **factual** allegations from which one could draw a reasonable inference that the Plaintiffs inherited and now own a claim to a property interest in the Property.

All of Plaintiffs' alleged inheritances emanate from Julian Cuevas's "interest in the…Property" that was allegedly distributed by will to his children. (*See* 2d Am. Compl. ¶¶ 22–30.) But the complaint nowhere describes the nature of the interests that were distributed or the manner in which they were distributed. For example, the complaint does not state if Julian Cuevas's children inherited their interest in the Property as joint tenants (which generally includes a right of survivorship) or tenants in common (which generally does not). (*Id.* ¶ 23.) Plaintiffs' allegations regarding the subsequent alleged inheritances are equally deficient. Although Plaintiffs allege that they "inherited" their purported interest in the Property from one of their parents, or that such interest "passed" to them from one of their parents, they do not allege any facts from which one could reasonably infer that they inherited anything at all. They do not allege whether their parents left a will or died intestate, or where their parents lived at the time of their death. And some of the few facts that Plaintiffs do allege contradict their conclusory assertions of inheritance. Specifically, plaintiff Esther Sanchez claims to have inherited her purported interest in the Property from her husband, Aureliano Echevarria, who was one of Julian Echevarria's sons. (*Id.* ¶¶ 29–30.) But according to Plaintiffs' own allegations, Aureliano died in 1986—one year before his father. (*Id.*) The being so, Aureliano could not

14

have inherited an interest in the Property from his father's death, and his wife in turn could not have inherited such an interest from Aureliano.

**Second**, even if Plaintiffs had alleged facts demonstrating that they own claims to the Property, Plaintiffs still fail to state a cause of action under Title III because they fail to allege that they both acquired their purported interests in the Property and became U.S. citizens before the Act's enactment date, March 12, 1996. *See Gonzalez*, 2020 WL 1169125, at *2. Under Title III, "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action…on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). Thus, to have an actionable claim to property that was allegedly confiscated before March 12, 1996, the plaintiff must both own that claim and be a U.S. citizen as of March 12, 1996. *Gonzalez*, 2020 WL 2323032, at *2 (holding that the plaintiff "must already own the interest in the confiscated property" and "already [be a] United States citizen[]" on March 12, 1996 when the Act was passed).

Here, because Plaintiffs allege that the Cuban government confiscated the Property well before the Act's March 12, 1996 enactment date (2d Am. Compl. ¶ 31), they must allege that they were U.S. citizens and owned their purported claims to the Property as of that date. Plaintiffs fail to do so. As an initial matter, according to Plaintiffs' own allegations, Esther Sanchez, Consuelo Cuevas, and Carmen Florido did not become U.S. citizens until after March 12, 1996. (*Id.* ¶¶ 3–5.) They therefore lack an actionable claim regardless of when they allegedly inherited that claim.

In any event, Plaintiffs fail to allege facts showing that any of them acquired their purported claims before March 12, 1996. The complaint admits that Carmen Florida did not inherit her purported claim until 2010 at the earliest. (*Id.* ¶ 25.) And although Plaintiffs allege that Mario Echevarria and that Consuelo Cuevas inherited their claims at some point after their fathers' deaths in 1987 and 1990, respectively, the complaint does not allege facts showing when they actually inherited those alleged claims. In both instances, the complaint merely states that the relevant decedent's interest "passed to" or was "inherited by" his "wife and children." (*Id.* ¶¶ 27, 29.) The complaint does not state whether the wife and children both inherited directly from the decedent upon his death or if the decedent's entire estate went to the wife first and was then distributed to the children (including Echevarria and Cuevas) at some later date. Nor does the complaint allege any facts from which one could draw an inference on the matter. And, as already explained, the complaint's few factual allegations regarding Esther Sanchez affirmatively disprove her conclusory allegation of inheriting a claim the Property from her husband, as her husband predeceased his father (Julian Echevarria) and could not have inherited a claim upon Julian Echevarria's death. (*Id.* ¶¶ 29–30.)

### 2.   Plaintiffs fail to plead trafficking.

Plaintiffs fall equally short in pleading trafficking. The Act's definition of *traffics* has two parts. Subparagraph (A) describes three types of activities related to confiscated property that, if done knowingly and intentionally, constitute trafficking. 22 U.S.C. § 6023(13)(A). Subparagraph (B) then lists four categories of conduct that do not constitute trafficking. *Id.* § 6023(13)(B). Among the conduct that specifically does not constitute trafficking is "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." *Id.* § 6023(13)(B)(iii) (hereinafter the "Lawful Travel Clause"). Here, Plaintiffs' allegations fail under both parts of the definition.

### a.   Plaintiffs fail to plead that the Expedia Entities acted knowingly and intentionally.

To plead trafficking, Plaintiffs must allege facts that give rise to a reasonable inference that the Expedia Entities knowingly and intentionally engaged one of the three categories of conduct related to confiscated property described in subparagraph (A) of the Act's definition. *See* 22 U.S.C. § 6023(13)(A); *Gonzalez*, 2020 WL 1169125, at *2; *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("*Iqbal* itself directly held that malice and other degrees of intent are subject to the plausibility pleading standard."). Plaintiffs' theory rests on the second category of conduct: "engag[ing] in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13)(A)(ii). Specifically, Plaintiffs allege that the Expedia Entities "knowingly and intentionally used or benefitted, directly or indirectly, from the confiscated…Property by offering, for economic benefit, reservations at the Pullman Cayo Coco." (2d Am. Compl. ¶ 57.) But just as in *Gonzalez*, Plaintiffs' formulaic and conclusory assertion that the Expedia Entities acted "knowingly and intentionally" is insufficient to plead knowledge or intent. *See Gonzalez*, 2020 WL 1169125, at *2 ("The Complaint offers only conclusory allegations that the Defendants knowingly and intentionally trafficked in confiscated property."). And just like the plaintiff in *Gonzalez*, Plaintiffs do not allege any facts showing that the Expedia Entities "knew the property was confiscated by the Cuban government nor that it was owned by a United States citizen." *Id.*

The only **factual** allegation in Plaintiffs' complaint that even touches on the Expedia Entities' state of mind or intent is the assertion that that the Expedia Entities acted knowingly and intentionally because they continued to promote the Resorts on their websites after receiving letters from Plaintiffs' counsel that purportedly put them on notice "of [Plaintiffs'] intent to commence an action…unless [the Expedia Entities] ceased to traffic the . . . Property." (2d Am. Compl. ¶ 36 & Ex. I.)[7] Plaintiffs then suggest that doing so is somehow a "recognition of their liability." (*Id.* ¶ 36 n.10.)

---

[7] Although the Court must accept this allegation as true for purposes of ruling on the motion to dismiss, it is worth noting that it is not true. The Expedia Entities stopped offering reservations at

This heads-I-win-tails-you-lose argument is absurd and nonsensical. If a defendant's decision to cease alleged trafficking conduct after learning of a Title III claim constitutes evidence of knowledge and intent, then the safe harbor Congress created to insulate defendants who do exactly that from treble damages would be meaningless. *See* 22 U.S.C. § 6082(a)(3)(B) (imposing treble damages only on persons who continue trafficking more than 30 days after receiving a notice of intent to sue the person for such trafficking). Further, even if the Expedia Entities believed that Plaintiffs' claims had any merit (they do not) and ceased offering reservations at the Pullman Cayo Coco because of that belief (they did not), ceasing to offer those reservations only **after** learning of Plaintiffs' claims would show that their conduct was **not** knowing or intentional—the opposite of Plaintiffs' nonsensical conclusion.

### b. The Lawful Travel Clause bars Plaintiffs' claims.

Under the Lawful Travel Clause, trafficking excludes "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). Because the Lawful Travel Clause is part of the definition of *traffics*, and trafficking is an essential element of a Title III claim, plaintiffs must plead facts showing that defendants' actions fall outside the Lawful Travel Clause. *See, e.g.*, *Benjamin v. CitiMortgage, Inc.*, No. 0:12-cv-62291-FAM, 2013 WL 1891284, at *3 (S.D. Fla. May 6, 2013) (Moreno, J.) (dismissing FDCPA claim where plaintiff failed to allege that defendant bank did not fall within exception to definition of "debt collector"); *Monroe v. CitiMortgage, Inc.*, No. 8:07-cv-0066-SCB-TGW, 2007 WL 1560194 at *2 (M.D. Fla. May 29, 2007) (same). Plaintiffs have not even attempted to do so. For that reason alone, they fail to adequately allege trafficking.

The only allegation Plaintiffs offer on this point is the conclusory assertion, made "[o]n information and belief," that many of the Expedia Entities' customers "travel to Cuba, and to the Pullman Cayo Coco in particular, for tourism," which Plaintiffs state "is not a permitted purpose of travel to Cuba under the U.S. Treasury Department regulations." (2d Am. Compl. ¶ 43.) This allegation fails.

A plaintiff cannot save a deficient conclusory allegation by slapping the phrase "on information and belief" in front of it. Rather, in order to satisfy the *Twombly* plausibility standard, the plaintiff must allege facts that make the asserted belief plausible. *See McCullough v. Bd. of Regents*, 623 F. App'x 980, 983 (11th Cir. 2015) (affirming dismissal where plaintiff failed to support allegation made on "information and belief" with enough facts to make that allegation plausible under *Twombly*). Plaintiffs offer no facts to support their stated belief that many of the Expedia Entities'

---

the Pullman Cayo Coco before Plaintiffs' counsel sent the notices. Because that fact could easily have been verified by anyone with internet access at the time, it is unclear what good faith basis Plaintiffs have for alleging otherwise.

customers travel to Cuba or the Resorts for "tourism" or any unlawful purpose. Moreover, Plaintiffs omit that the regulations issued by the Treasury Department's Office of Foreign Assets Control ("OFAC") merely require travel service providers like the Expedia Entities to collect and maintain certifications from travelers indicating their category of lawful travel. *See* 31 CFR § 515.572(b). Plaintiffs never allege that the Expedia Entities failed to collect certifications for the Resorts. Because Plaintiffs fail to sufficiently allege that the Expedia Entities' actions fall outside the Lawful Travel Clause, they fail to adequately plead trafficking.

Confronted with their failure to adequately allege facts satisfying the Lawful Travel Clause, Plaintiffs will likely argue that they need not do so because the Lawful Travel Clause is an affirmative defense. To be sure, two judges in this district declined to dismiss claims against a cruise ship company based on the plaintiffs' failure to allege conduct outside the Lawful Travel Clause, concluding that the clause is an affirmative defense as to which the defendant bears the burden of proof. *See Garcia-Bengochea v. Carnival Corp.*, No. 1:19-cv-21725, 2019 WL 4015576, at *3–4 (S.D. Fla. Aug. 26, 2019) (King, J.); *Havana Docks Corp. v. Carnival Corp.*, No. 1:19-cv-21724-BB, slip op. at 7–8 (S.D. Fla. Aug. 28, 2019), ECF No. 47 (Bloom, J.). As explained below, the Expedia Entities respectfully disagree with those rulings and their underlying analyses, which this Court is not bound by[8] and should not follow. *See Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1383, n.5 (S.D. Fla. 2013) (citing *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n.7 (2011)). The statutory construction of the Helms-Burton Act makes clear that Congress intended the Lawful Travel Clause to be an element of the civil remedy—not an affirmative defense.

"The touchstone for determining the burden of proof under a statutory cause of action is the statute itself." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008) (citing *Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). "When a statute is silent as to who bears the burden of proof, we resort to 'the ordinary default rule that plaintiffs bear the risk of failing to prove their claims.'" *Id.* (quoting *Schaffer*, 546 U.S. at 56). This default rule does not apply, however, to special exceptions to a statute's prohibitions or "general norms." *Id.* at 1112–13. Although "Congress is adept at drafting general norms that provide for exceptions, and frequently does so," *id.*, it did not do so with the Lawful Travel Clause.

Had Congress intended to place the burden of proof for the Lawful Travel Clause on defendants, it could have written it as an exception to Title III's liability-creating provision (*i.e.*, its "general norm"), § 6082(a)(1)(A), by putting it in that same section. Indeed, the statutory language shows that § 6082 is precisely where any such exceptions would appear. 22 U.S.C. § 6082(a)(1)(A)

---

[8] Indeed, in explaining its holding, the court in *Garcia-Bengochea* opted not to follow this Court's analysis in *Benjamin*, finding it "unpersuasive." *Garcia-Bengochea v. Carnival Corp.*, No. 1:19-cv-21725, 2019 WL 4015576, at *3–4 (S.D. Fla. Aug. 26, 2019) (King, J.).

4815-1876-9345

(beginning with, "Except as otherwise provided in **this section**…." (emphasis added)). But Congress included the Lawful Travel Clause in the Act's definition of *traffics*, which is not in Title III at all, much less in its liability-creating section. By doing so, Congress indicated its intent to make the Lawful Travel Clause part of the plaintiff's claim, not an affirmative defense. The Court should therefore dismiss Plaintiffs' claim for failing to even attempt to allege that the Expedia Entities' conduct falls outside the clause.

In any event, even if Congress had made the Lawful Travel Clause an affirmative defense, the clause still bars Plaintiffs' claim because it is apparent on the face of the complaint that defendants' alleged conduct fits squarely within the clause. *See Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."), *aff'd and reinstated on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc); *cf. Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations…show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."). Plaintiffs allege that the Expedia Entities offered reservations at the Pullman Cayo Coco to U.S. residents. (2d Am. Compl. ¶ 33.) This allegation, taken as true, shows that the Lawful Travel Clause bars Plaintiffs' claims because offering U.S. residents hotel reservations in Cuba is "incident to" and "necessary to the conduct of" lawful travel to Cuba. *See* 22 U.S.C. § 6023(13)(B)(iii).

To start, there can be no dispute that U.S. residents may lawfully travel to Cuba. *See* 31 C.F.R. § 515.560(a) (authorizing U.S. persons to travel to Cuba for a variety of reasons, including family visits, official government business, professional research, religious activities, and public performances, among others). Indeed, federal regulations authorize the Expedia Entities, by general license, to provide travel-related services to those U.S. persons lawfully traveling to Cuba. 31 C.F.R. § 515.572(a) ("Persons subject to U.S. jurisdiction are authorized to provide travel services in connection with travel-related transactions involving Cuba authorized pursuant to this part"); *see Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F. Supp. 2d 59, 64 (D.D.C. 2009) (the "general license" contained in Subpart E of the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. §§ 515.501-515.591,  "broadly authorizes entire classes of transactions").[9]

---

[9] It comes as no surprise that Plaintiffs do not even attempt to allege that any reservations at the Pullman Cayo Coco were secured through the Expedia Entities' websites were not incident to lawful travel. This is likely because, consistent with the terms and conditions of various OFAC general and specific licenses, the Expedia Entities obtain from U.S. residents making reservations for travel to Cuba on its platform a certification that such travel is made in accordance with one of the authorized purposes of travel under the CACR. As such, reservations made on, through, or with any platform operated or offered by the Expedia Entities for Cuba are incident to lawful travel.

19

Nor can there be any question that offering hotel lodging in Cuba is both "incident to" and "necessary to the conduct of" such lawful travel. *Incident to* means simply "relating to." *Incident*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/incident (last visited Jan. 29, 2020); *see also Incident to Employment*, Black's Law Dictionary (11th ed. 2014) (defining incident to employment as "[a] risk that is related to or connected with a worker's job duties" (emphasis added)). The term *necessary* has consistently been construed broadly to mean "useful" or "convenient." *See, e.g.*, *Fish v. Kobach*, 840 F.3d 710, 734 (10th Cir. 2016) ("[C]ourts also have frequently interpreted 'necessary' to mean something less than absolute necessity…."); *Nat. Resources Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1236 (D.C. Cir. 1988) (same); *see also McCulloch v. Maryland*, 17 U.S. 316, 413 (1819) (holding that "necessary" in the Necessary and Proper Clause does not require strict essentiality, but rather requires means that are "convenient, or useful, or essential" to the purpose in question).

Even if there was any doubt about the broad meaning of those terms, the Act's legislative history eliminates it. The congressional conference committee report—which, "next to the statute itself [] is the most persuasive evidence of congressional intent" and "deserve[s] great deference by courts," *RJR Nabisco, Inc. v. United States*, 955 F.2d 1457, 1462 (11th Cir. 1992)—paraphrased the clause as "remov[ing] any liability for…any activities **related to** lawful travel to Cuba." H.R. Rep. No. 104-468, at 44 (1996) (Conf. Rep.), *reprinted in* 1996 U.S.C.C.A.N. 558, 559, 1996 WL 97265 (emphasis added). Congress itself thus interpreted "incident to" and "necessary" as meaning nothing more than "related to."

Hotel lodging in Cuba is both related to and necessary to the conduct of travel to Cuba. Indeed, lawful travel to Cuba would be largely impossible without it. Regardless of whether the Lawful Travel Clause is an element of a plaintiff's Title III cause of action or an affirmative defense, it bars Plaintiffs' claim here, and the complaint should be dismissed.

## CONCLUSION

The Court should dismiss this case under Rule 12(b)(2) because Plaintiffs fail to allege facts making out a prima facie case for personal jurisdiction. Barring that, the Court should dismiss this case under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs do not have constitutional standing. And even absent these twin jurisdictional defects, the Court should still dismiss this case under Rule 12(b)(6) because Plaintiffs' complaint fails to state a plausible claim under Title III.

## REQUEST FOR HEARING

The Expedia Entities respectfully submit that oral argument will be necessary to adequately argue the merits of the instant motion. Although other courts in this District have issued decisions relating to the Helms-Burton Act, that precedent is still limited. The Expedia Entities estimate that one hour would be required for the oral argument.

Dated: June 29, 2020

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300 Telephone
(512) 495-6399 Facsimile

By: _____
David D. Shank (*pro hac vice*)
Texas Bar No. 24075056
dshank@scottdoug.com

AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
(305) 374-5600 Telephone
(305) 349-4656 Facsimile

Augusto E. Maxwell
Florida Bar No. 867845
augusto.maxwell@akerman.com
Lolita T. Sosa
Florida Bar No. 121113
lolita.sosa@akerman.com

*Counsel for Defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, and Orbitz, LLC*

4815-1876-9345