UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-22620-CIV-MORENO

MARIO ECHEVARRIA, CARMEN
FLORIDO, ESTHER SANCHEZ, and
CONSUELO CUEVAS,

        Plaintiffs,

vs.

EXPEDIA GROUP, INC., HOTELS.COM
L.P., HOTELS.COM GP, LLC, ORBITZ,
LLC, BOOKING.COM B.V., and BOOKING
HOLDINGS INC.,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Congress passed Title III of the Cuban Liberty and Democratic Solidarity Act of 1996, known as the Helms-Burton Act, 22 U.S.C. § 6021, *et seq.*, on March 12, 1996, to provide a remedy to U.S. nationals, who were victims of the Cuban government's property confiscations. Plaintiffs bring this case seeking compensation under the statute for the loss of real property that was confiscated by the Cuban government, and on which the Pullman Cayo Coco Hotel now stands. Defendants, who operate travel booking websites, are alleged "traffickers" of the property under the Act. Defendants move to dismiss the Amended Complaint arguing that Plaintiffs did not inherit their claims to the property before the statutory cut-off, that Plaintiffs fail to plead enough facts to establish scienter, that Plaintiffs fail to plead the lawful travel exception, that Plaintiffs fail to plead that the property was "not residential" at the time of the confiscation, and that Plaintiffs were not American citizens at the time of the confiscation. The Court agrees in part that Plaintiffs Carmen

Florido and Consuelo Cuevas did not have ownership of their claims prior to the statutory cut-off date. The Court, however, disagrees with Defendants in all other respects.

THIS CAUSE came before the Court upon Defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, and Orbitz, LLC's Amended Motion to Dismiss Plaintiffs' Amended Complaint and Defendants Booking.com B.V. and Booking Holdings Inc.'s Motion to Dismiss Complaint (**D.E. 150 and 155**), both filed on **July 13, 2023**.

THE COURT has considered the Motions, the Plaintiffs' response in opposition, the Defendants' replies, the pertinent portions of the record and, being otherwise fully advised in the premises, it is **ADJUDGED** that, for the reasons explained below, the Motions are **GRANTED** in part as to Plaintiffs Carmen Florido, Consuelo Cuevas, and Esther Sánchez[1] and **DENIED** in all other respects. Defendants shall file an answer by no later than **September 22, 2023**.

## BACKGROUND

Plaintiffs Mario Echevarría, Carmen Florido, and Consuelo Cuevas bring this case against Defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, Orbitz, LLC, Booking.com B.V., and Booking Holdings Inc. pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "Helms-Burton Act" or the "Act"). The Helms-Burton Act provides U.S. nationals who hold a claim to property that was confiscated by the communist Cuban government with a private cause of action against persons who have "trafficked" in such property. 22 U.S.C. § 6082(a).

Plaintiffs, Mario Echevarría, Consuelo Cuevas, and Carmen Florido (collectively, the "Cuevas Heirs") are United States nationals who allege that they have a legitimate interest and claim to Cayo Coco, an island off the North Coast of Cuba, near the city of Morón (the "Cuevas

---

[1] The Amended Complaint includes Esther Sánchez in the caption, but fails to state her cause of action. Accordingly, the Court dismisses Sánchez's case.

Property" or the "Property"). According to the Amended Complaint, Plaintiffs inherited the property through a long, detailed line of succession. Partial ownership of the land eventually passed to Plaintiff Mario Echevarría following the death of his mother in 1993, to Plaintiff Consuelo Cuevas following the death of her mother in 2012, and to Plaintiff Carmen Florido following the death of her mother in 2010. The Cuevas Property was confiscated by the Cuban government on August 16, 1960, whereupon the Cuban government developed the island and, together with various hotel chains, including Accor S.A. built a number of resorts on the Cuevas Property. Among those resorts is the Pullman Cayo Coco Hotel (the "Trafficked Hotel").

The Defendants operate travel booking websites through which they offer and sell reservations at the Trafficked Hotel. In doing so, Defendants generate revenue when website users book reservations at hotels listed on Defendants' websites. Within the two years prior to the filing of this action, Defendants marketed and sold online reservations for the Trafficked Hotel in Cuba. On this basis, Plaintiffs allege that the Defendants have "knowingly and intentionally used . . . the confiscated Cuevas Property by soliciting and selling, for economic benefit, reservations at the Trafficked Hotel . . . without the authorization of any United States national who holds a claim to the property." Amended Complaint at ¶¶ 93, 94. And Plaintiffs further claim that Defendants' knowing and intentional conduct relating to the Cuevas Property constitutes "trafficking" as defined in 22 U.S.C. § 6023(13)(A); thus, Plaintiffs assert that Defendants are liable for all money damages allowed by statute. *Id.* at ¶¶ 61, 71.

Defendants, however, move to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), advancing several arguments. First, Defendants argue that Plaintiffs failed to plead a claim entitling them to relief because Plaintiffs fail to plausibly allege that they acquired their claims to the Cuevas Property before March 12, 1996, which is a threshold

requirement to sustain a cause of action under the Act. Second, Defendants contend that Plaintiffs' Amended Complaint must be dismissed because Plaintiffs fail to allege sufficient facts to allow a reasonable inference that Defendants "knowingly and intentionally" trafficked in the confiscated property. Third, Defendants aver that Plaintiffs fail to plead a claim for violation of the Act because Plaintiffs fails to allege that Defendants' use of the Cuevas Property was *not* incident to lawful travel in Cuba. Fourth, Defendants argue the Amended Complaint fails to establish that the Cuevas Property is not residential. The final argument that Defendants raise is that Plaintiffs are not entitled to relief because they were not American citizens at the time the Cuban government confiscated the property.

## LEGAL STANDARD

A court may grant a motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id*. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

A court ruling on a motion to dismiss must accept the well-pled factual allegations as true and view the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850

(11th Cir. 2017). But the court need not accept as true allegations upon information and belief that lack sufficient facts to make the allegations plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551, 557); *see also In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true."). The court also need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019). "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).

## DISCUSSION

### I.  Ownership of a Claim to the Cuevas Property

Defendants first argue that Plaintiffs' Helms-Burton Act claims fail because Plaintiffs have not plausibly alleged that they acquired ownership of their claims prior to the statutory cutoff date of March 12, 1996. Under the Helms-Burton Act, any person who "traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property . . . ." 22 U.S.C. § 6082(a)(1)(A). "In the case of property confiscated before March 12, 1996," however, "a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." *Id.* § 6082(a)(4)(B). Thus, to maintain their cause of action under Title III of the Act, Plaintiffs must plausibly allege that they (1) own a claim to property that was confiscated by the Cuban government on or after January 1, 1959; (2) that they

5

acquired their claim to the confiscated property before March 12, 1996; and (3) that Defendants trafficked in the confiscated property.

Because each of the Plaintiffs inherited their claims at different times, the Court will analyze each one's claim separately to determine if the statutory cut-off date is met. Plaintiffs allege a detailed line of succession to establish ownership. The Amended Complaint alleges following facts as to the line of succession for each Plaintiff:

- The Cuevas Property was initially "inherited by Julián Cuevas and his wife, Isabel Angulo, from Isabel's father . . . ." Amended Complaint at ¶ 41.

- Thereafter, "when Isabel Angulo and Julián Cuevas died in Cuba in 1885 and in 1930, respectively. Julián Cuevas did not re-marry after his wife's death[,] and their 100% ownership interest in the Cuevas property was distributed by will to their five surviving children, Emilio Cuevas, Julio Cuevas, Maria Teresa Cuevas, Carmen Cuevas, and Elvira Cuevas." *Id.* at ¶ 42.

- The first of the five surviving children, Emilio Cuevas, "died in 1934 in Cuba intestate, and his interest in the Cuevas Property passed to his four surviving children, including his sons Manuel Cuevas and Julián Cuevas (II) by operation of law." *Id.* at ¶ 43.

- Then, the second and third of the five originally surviving children, Julio Cuevas and Maria Teresa Cuevas, "died in Cuba intestate, unmarried and childless in 1936 and 1956, respectively. When Julio Cuevas died in 1936, his interest in the Cuevas Property "passed to his surviving siblings, Maria Teresa Cuevas, Elvira Cuevas, and Carmen Cuevas, and to Emilio Cuevas' children, by operation of law." *Id.* at ¶ 44. And when Maria Teresa Cuevas died in 1956, her "interest [ ] in the Cuevas Property passed to her surviving siblings, Elvira Cuevas and Carmen Cuevas, and to Emilio Cuevas' children, by operation of law." *Id.*

- Three years later, the fourth of the five originally surviving children, "Elvira Cuevas[,] died in 1959 in Cuba intestate. She was predeceased by her husband Aureliano Echevarría. She did not re-marry and was survived by two children, Rosa Elvira Echevarría and Julián Echevarría, who inherited her interest in the Cuevas Property by operation of law." *Id.* at ¶ 45.

- The last of the five originally surviving children, "Carmen Cuevas[,] died in Cuba intestate, unmarried and childless on or about 1962." *Id.* at ¶ 46. And because she died unmarried and childless, "[h]er interest in the Cuevas Property passed to the children of Elvira Cuevas and Emilio Cuevas by operation of law." *Id.*

6

- Elvira Cuevas' daughter, "Rosa Elvira Echevarría[,] died in 1986 in Miami intestate. She was predeceased by her husband, did not re-marry and died childless. Her interest in the Cuevas Property passed to her surviving sibling, Julián Echevarría, by operation of law." *Id.* at ¶ 47.

- Finally, "Julián Echevarría died in 1987 in Miami intestate. Upon his death, his interest in the Cuevas Property passed by operation of law to his wife, Cira Marquez, who died in 1993 in Miami intestate. Marquez did not remarry and, upon her death, her interest in the Cuevas Property was inherited by their three surviving children, including plaintiff Mario Echevarría and Carmen Echevarría, by operation of law." *Id.* at ¶ 48.

- Plaintiff Mario Echevarría's sister, Carmen Echevarría, divorced before 1996, kept 100% of her interest in the Cuevas Property after the divorce, did not re-marry, and died an American citizen in 2010 in Miami. Upon her passing, her interest in the Cuevas Property passed by will to her only surviving child, Plaintiff Carmen Florido. *Id.* at ¶ 50.

- The third Plaintiff, Consuelo Cuevas, inherited her claim through the Emilio Cuevas line of succession. Emilio Cuevas' son, Manuel Cuevas, died an American citizen in 1990 in Miami intestate. His interest in the Cuevas Property passed by operation of law to his wife, Nilda Peñaranda, who died in Miami intestate in 2012. Upon Peñaranda's death, her only surviving child, Plaintiff Consuelo Cuevas, inherited her interest in the property. *Id.* at ¶ 49.

Defendants argue that these allegations fail to plausibly show that Plaintiffs inherited an actionable ownership interest in the Cuevas Property before the March 12, 1996 statutory cutoff date. Taking the above facts as true, which this Court must on a motion to dismiss, Plaintiff Mario Echevarría meets his burden of pleading enough factual allegations to permit the reasonable inference that he acquired ownership of an actionable interest in the Cuevas Property when his mother died in 1993. *See Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 860 F. Supp. 2d 1329, 1333 (S.D. Fla. 2011) ("When considering a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff.").

As for Plaintiffs Consuelo Cuevas and Carmen Florido, the question is whether they can successfully state a claim since their mothers inherited the claims before the statutory cutoff date.

The Helms-Burton Act sets a clear deadline for when United States nationals may bring claims relating to the trafficking of their confiscated property: "In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082 (a)(4)(B). Like the plaintiffs in *Del Valle v. Trivago, GmbH*, No. 19-22619-CIV, 2023 WL 5141699, *3 (S.D. Fla. Aug. 10, 2023), Cuevas and Florido argue that they should be able to assert claims based on their mothers' ownership interest in the property prior to the statutory cut-off date. In *Del Valle*, the court found this argument unavailing for several reasons. *Id.* First, the Eleventh Circuit in *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 930-31 (11th Cir. 2023) held that courts "have no power to waive or extend [the Helms-Burton Act's claims] deadline." *See also Gonzalez v. Amazon.com, Inc.*, 835 F. App'x 1011, 1012 (11th Cir. 2021) ("The language that Congress used in this provision is clear and unambiguous. A U.S. national whose property was confiscated before March 12, 1996, cannot recover damages for another person's unlawful trafficking of that property unless "such national" – i.e., the specific person bringing suit – acquired the claim to the property before March 12, 1996. And because the statute's text is plain, we have no power to waive or extend this deadline."). "*Garcia-Bengochea*'s plain and unequivocal language sits directly at odds with [Plaintiffs'] arguments." *Del Valle*, 2023 WL 5141699, at *3 (citing *Garcia-Bengochea*, 57 F.4th at 930-31). This Court likewise finds that Cuevas' and Florido's claims are barred by the statutory cut-off date.

Despite the clear statutory cut-off date, Plaintiffs urge the Court equitably toll the March 12, 1996 statutory cut-off based on the long suspension of the cause of action. *Garcia-Bengochea*, however, is clear. The Eleventh Circuit explained that under the bar date, "[a] U.S. national whose property was confiscated before March 12, 1996, cannot recover damages . . . unless [he or she]

8

acquired the claim to the property before March 12, 1996." *Id.*, 57 F.4th at 931. As already noted, the Eleventh Circuit added that "because the statute's text is plain, [courts] have no power to waive or extend this deadline." *Id.* (quoting *Gonzalez*, 835 F. App'x at 1012). Plaintiffs' rationale underlying its equitable tolling argument applied equally in *Garcia-Bengochea*, and Judge Jordan's concurring opinion noted that the statutory bar date applies even though it leaves heirs without a right to sue if they inherited their claims after the statutory cut-off of March 12, 1996, and their predecessors died during the period of suspension of the cause of action, which did not end until 2019. *Id.* at 932.

## II. Plaintiff Adequately Pleads Trafficking Under the Act

### a. Scienter: "Knowing and Intentionally"

Defendants argue next that the Amended Complaint lacks sufficient non-conclusory, factual allegations to permit a reasonable inference that Defendants knowingly and intentionally trafficked in the confiscated property. Under the Act, "a person 'traffics' in confiscated property if that person knowingly and intentionally . . . engages in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13).

As an initial matter, the remaining Plaintiff, Mario Echevarria, sufficiently pleads that Defendants "engage[d] in a commercial activity using or otherwise benefiting from confiscated property" because Plaintiff alleges that "[i]n addition to directly benefiting from the Cuevas Property by receiving commissions or other fees for booking rooms at the Trafficked Hotel, the . . . Defendants also derive an indirect benefit from the Trafficked Hotel by receiving advertising revenues driven by or related to their offering and selling reservations at the Trafficked Hotel." Amended Complaint at ¶¶ 66. And the Amended Complaint further alleges that "[t]he defendants have knowingly and intentionally used or benefited, directly or indirectly, from the confiscated

9

properties by soliciting and selling, for economic benefit, reservations at the Trafficked Hotel . . . which constitutes trafficking that violates Title III of the Libertad Act." *Id.* at ¶ 93.

A closer question, however, is whether Plaintiff sufficiently alleges that Defendants' conduct was "knowing and intentional." Defendants are correct that many of the ~~Plaintiffs'~~ allegations regarding scienter are insufficiently conclusory. *See, e.g., id.* at ¶¶ 60, 61 ("[T]he Expedia Defendants knowingly and intentionally participated in trafficking the Cuevas Property . . . ," and "[t]he Expedia Defendants' knowing and intentional conduct regarding the Cuevas Property constitutes trafficking, as defined in 22 U.S.C. 6023(13)(A)"). That said, Plaintiff also alleges that, "on August 7, 2019, [Plaintiff] informed defendants of [his] intent to commence an action unless defendants ceased to traffic in the Cuevas Property," and "[d]espite being on actual notice, defendants continued to market and make reservations at the Trafficked Hotel for their economic benefit." *Id.* at ¶¶ 55, 56. Accepting these facts as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the Amended Complaint sufficiently sets forth Defendants' scienter, at least for the post-notice period because "trafficking in confiscated property after receiving notice from the plaintiff is enough to establish scienter." *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1157 (S.D. Fla. 2022); *see also de Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 3173213, at *8 (S.D. Fla. Jul. 27, 2021) (denying motion to dismiss and finding the amended complaint "sufficiently sets forth Defendant's scienter, at the very least for the post-notice period" where plaintiff "allege[d] that "[d]efendant continued to traffic in the Confiscated Property both after it received Plaintiff's pre-suit notice letter and after it was served with the initial Complaint."); *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 332 (D. Del. 2021) (finding that plaintiff plausibly alleged scienter against defendants who continued to traffic in the subject property more than thirty days after receiving plaintiff's pre-suit notice of

claim). This Court is aware that in *Del Valle*, 2023 WL 5141699, the district court found that scienter was not adequately pled because plaintiffs failed to identify the property at issue in the pre-suit notice. Here, the Plaintiff identifies the entire Cayo Coco island as the property confiscated by the Cuban government from the Plaintiff's family. The letter also identifies the specific hotel at issue, which is run by Accor, S.A. ECF 116-17, Composite Exhibit Q. Given the pleading standard the Court must adhere to on a motion to dismiss, these allegations sufficiently plead scienter.

### b. Statutory Exception: the "Lawful Travel Exception"

Under the Act, there are four categories of conduct that do ***not*** constitute trafficking. 22 U.S.C. § 6023(13)(B). One of these categories are "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." *Id.* § 6023(13)(B)(iii) (the "Lawful Travel Exception"). Defendants argue that because the Lawful Travel Exception is part of the definition of "traffics," and trafficking is an essential element of a Title III claim, Plaintiff must allege that Defendants' actions fall outside the Lawful Travel Exception to state a valid claim. On this basis, Defendants demand dismissal of the Amended Complaint because Plaintiff fails to allege a negative—that the Lawful Travel Exception does ***not*** apply, i.e., that Defendants' online booking of room reservations at the Trafficked Hotel was not "incident to lawful travel" and "not necessary to the conduct of such travel." In response, Plaintiff contends that the Lawful Travel Exception is an affirmative defense to liability under the Act, and thus it need not be refuted or negated in the Amended Complaint to state a valid claim.

The Court rejects Defendants' argument that the Amended Complaint should be dismissed because Plaintiff failed to plead around the Lawful Travel Exception. While Defendants

"acknowledge" that "some judges" have held the Lawful Travel Exception to be an affirmative defense (ECF No. 150 at 11 n.8; ECF No. 155 at 19 n.8), Defendants fail to identify a single case in which any court has held otherwise. This is unsurprising as it appears that every court in this district that has addressed this issue has uniformly held that the Lawful Travel Exception is an affirmative defense which Defendants must plead and prove. *See, e.g., Regueiro v. Am. Airlines, Inc.*, No. 19-cv-23965-JEM, 2022 WL 2399748, at *10 (S.D. Fla. May 20, 2022) ("The lawful travel exception is an ***affirmative defense*** that [d]efendant bears the burden of proving.") (emphasis added); *de Fernandez v. Crowley Holdings, Inc.*, 593 F. Supp. 3d 1162, 1171 (S.D. Fla. 2022) ("Defendants argue that Plaintiffs are required to plead around the lawful travel defense set forth in § 6023(13). The Court disagrees. . . . ***the burden is on Defendants*** to establish that their activity . . . was incident to lawful travel to Cuba.") (emphasis added); *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1286 (S.D. Fla. 2019) ("Based on the text and structure of Helms-Burton, the Court holds that the lawful travel exception is an ***affirmative defense*** to trafficking that must be established by [defendant], not negated by [p]laintiff.") (emphasis added); *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2019 WL 8895241, at *3 (S.D. Fla. Aug 28, 2019) ("Based on the language of the Libertad Act, the Court agrees with the Plaintiff that the 'lawful travel exception' is an ***affirmative defense*** to trafficking . . . . Therefore, this exception must be established by Carnival and [p]laintiff was not required to negate this exception in its Complaint.") (emphasis added). Therefore, notwithstanding Defendants' disagreement with those rulings, the Court declines Defendants' invitation to depart from those uniform conclusions of law and hold otherwise.

### c. Statutory Exception for Residential Property

The Booking Defendants contend that Plaintiffs failed to allege that the Cayo Coco property was "not residential." As such, Defendants claim Plaintiff fails to state a proper

trafficking claim. The Court is not persuaded by this argument as Plaintiffs allege that Cayo Coco was "uninhabited, and used by the family and others as a recreational area and for limited commercial purposes, including the production of charcoal, the raising of livestock, and the production of salt." Amended Complaint at 2. Certainly, these allegations suffice to say the property was not residential.

### III. The Impact of Plaintiff's Nationality

In their reply brief, the Booking Defendants advance the argument that under *Glen v. Club Mediterrane, S.A.*, 450 F.3d 1251, n. 3 (11th Cir. 2006), the Act does not allow a trafficking claim for property "owned by Cuban nationals at the time of its expropriation[.]" Specifically, Defendants rely on a footnote, where *in dicta*, the Eleventh Circuit said that the "property at issue in this litigation was owned by Cuban nationals at the time of its expropriation and thus *may* not be the proper subject of a trafficking claim." The Eleventh Circuit, however, was clear that the Glens were not asserting a trafficking claim and it was not making a determination in that regard. Defendants' argument is at odds with the Congressional finding that "[t]o deter trafficking in wrongfully confiscated property, *United States nationals who were the victims of these confiscations* should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11).

Since *Glen*, the Eleventh Circuit and lower federal courts have addressed the issue of whether Helms-Burton requires plaintiffs to have been United States nationals at the time the Cuban government confiscated their property. *Garcia-Bengochea*, 57 F.4th at 932 (Jordan, J., concurring) ("For many Cubans who had property confiscated by the Cuban government, *and who later became U.S. nationals,* Title III of the Act was the only remedy available to obtain monetary compensation."); *de Fernandez v. CMA CGM, S.A.*, No. 21-22778-CIV-RUIZ, 2023 WL 4633553,

*8 (S.D. Fla. July 20, 2023) ("Here, the text of the statute is clear: there is nothing requiring a plaintiff to be a United States national at the time the plaintiff's property is confiscated by the Cuban government."). "Congress's use of the expansive phrase "any United States citizen" shows it clearly meant to provide a civil remedy to plaintiffs who are now United States citizens but were not when their property was confiscated. These plaintiffs are just as much United States citizens as those who were already citizens when the Cuban government confiscated relevant property." *Id.; see also de Fernandez v. Crowley Holdings, Inc.*, No. 21-20443-CIV-GAYLES, 2023 WL 2646346, at *2 (Mar. 27, 2023) ("Nothing in the statutory language mandates that the owner of the claim to the confiscated property be a United States national at the time of the taking."). The Court agrees with these cases and declines Defendants' request to read Plaintiff Echevarría out of the language of the statute, where the Congressional findings clearly reference nationals in his position.

DONE AND ORDERED in Chambers at Miami, Florida, this 6th of September 2023.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record