UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-22620-CIV-MORENO
19-22621-CIV-MORENO

MARIO ECHEVARRIA,

       Plaintiff,

vs.

EXPEDIA GROUP, INC., HOTELS.COM
L.P., HOTELS.COM GP, LLC, ORBITZ,
LLC,

       Defendants.
_____/

## ORDER ON POST-TRIAL MOTIONS

In the nation's first jury trial involving Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021 *et seq.*, also known as the Helms-Burton Act, a Miami jury rendered verdicts totaling $119.4 million against all four corporate Defendants.[1] The Helms-Burton Act was enacted in 1996 as a reaction to Cuba's downing of two civilian aircrafts registered in the United States. The Act provides a civil private right of action for those United States nationals who owned property in Cuba, against anyone who knowingly traffics in property confiscated by the Communist Cuban government after the revolution of 1959. Defendants filed motions for judgment as a matter of law as well as a new trial, on multiple grounds. The allegations were that the corporate Defendants facilitated bookings at hotels in Cayo Coco, an island off the coast of Cuba, inherited by Plaintiff Mario Echevarria, a United States national, and that this property had been confiscated by the Communist Cuban government.

---

[1] The verdict against each Defendant was $9,950,000, and the jury awarded treble damages (i.e., $29,850,000) for continued trafficking more than 30 days after Defendants received Plaintiff's cease-and-desist notices.

On the other hand, Defendants asserted that there is insufficient evidence of Plaintiff's ownership of the property, insufficient notice to them to cease the alleged trafficking of the property, and that Defendants did not knowingly and intentionally traffic in the property. After trial, Defendants also argued that the total $120 million award for booking hotel rooms was constitutionally excessive, duplicative when applied to each Defendant for the repeated use of the same property, and unsupported by Plaintiff's damages expert.[2]

Throughout the trial, the Court expressed concerns with attributing responsibility to Expedia Group, Inc., as a holding company, for the acts of its subsidiaries, particularly Expedia, Inc. (a/k/a Expedia-WA), which was not even a defendant in this trial. After trial, the Court also expressed reservations about entering a judgment against Orbitz, LLC, based on the lack of evidence presented, as well as the award of identical damages for the two Hotels.com entities, based on weaker evidence on the bookings related to the different hotels. However, the case of *Del Valle v. Trivago GMBH*, issued on May 20, 2025, after this trial, compels the Court to first address the impact of the unpublished *per curiam* opinion. See No. 23-12966, 2025 WL 1443951 (11th Cir. May 20, 2025).

## I. **IMPACT OF *DEL VALLE***

In *Del Valle*, the Eleventh Circuit clarified the mental state required for liability under Title III and how a plaintiff can satisfy it. *See id.* at *4. The panel began with the language of the statute: trafficking in confiscated property must have been done "'knowingly and intentionally,'" and "'knowingly'" means with "'knowledge' or 'having reason to know.'" *Id.* (quoting 22 U.S.C. § 6023(13)(A), (9)). The Eleventh Circuit interpreted "having reason to know" as "invok[ing] a recklessness mens rea." *Id.* Applied to this context, the panel held that

---

[2] Other defense arguments such as lack of standing, the residential use exception barring recovery, and excusal of juror for cause prior to deliberations were also made but lack sufficient merit as to necessitate discussion beyond what has been previously ruled by the Court.

2

Title III liability attaches only when defendants "recklessly disregard the fact that properties in which they are trafficking would belong to U.S. nationals if they had not been confiscated by the Cuban government." *Id.* Because the *Del Valle* plaintiff did not provide the defendants with anything that gave rise to "a substantial or high likelihood that Del Valle own[ed] a claim to the allegedly confiscated beachfront property," the Eleventh Circuit affirmed dismissal of the complaint. *Id.* at *6–*7 (citation modified). The "[b]are, unsworn assertions of property ownership" that Del Valle presented in his notice and complaint were not enough to meet this threshold. *Id.* at *6.

Both parties recognize that *Del Valle* is not binding on this Court because it is unpublished. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent."); *Barber v. Governor of Ala.*, 73 F.4th 1306, 1320 (11th Cir. 2023) ("'[O]ur unpublished opinions are not precedential'; 'they do not bind us or district courts to any degree.'" (quoting *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1346 (11th Cir. 2022)). As such, the Court conducts its own analysis to determine *Del Valle*'s impact on this case.

Defendants argue that *Del Valle* justifies overriding the verdicts because no reasonable jury could have concluded that Defendants knowingly and intentionally trafficked under Title III. This is so, Defendants aver, because Plaintiff did not substantiate his claim to Cayo Coco until July 27, 2020—the day Plaintiff's counsel made the first document production in this case—at which point all guests booked through Defendants' websites had checked out of the hotels in question, and Defendants made no further bookings there. Prior to this date, Defendants contend they received from Plaintiff no more notice than the *Del Valle* plaintiff provided to the defendants in that case. Plaintiff's principal argument is two-fold. First, he argues that *Del Valle*—resolved at the pleading stage—is inapplicable because the Eleventh Circuit's analysis

3

was limited to clarifying pleading requirements and therefore does not affect this case, where a jury found based on the weight of the evidence that Defendants knowingly and intentionally trafficked in confiscated property previously owned by a U.S. national. Second, Plaintiff argues that *Del Valle* was wrongly decided because Title III contains no scienter requirement, and the Court was wrong to impose a heightened burden on Title III plaintiffs to present evidence to establish a defendant's state of mind to defeat a motion to dismiss.

After the benefit of extensive briefing by the parties and oral argument at the August 26, 2025 post-trial motion hearing, the Court concludes that Plaintiff's August 2019 notices were sufficient to meet Title III's *mens rea* requirement. 22 U.S.C. § 6023(13(A), (9). Where a cease-and-desist notice pursuant to § 6082(a)(3)(D) is sufficiently specific, it succeeds in putting a defendant on notice that the plaintiff's claim is legitimate. After all, *Del Valle* did not foreclose the possibility that such notice, by itself, could satisfy Title III's knowledge requirement.

In *Del Valle*, the Court deemed President Clinton's signing statement, the plaintiff's notices, and the complaint as insufficient to put the defendants on notice that the plaintiff's claim to the property was legitimate. *See* 2025 WL 1443951, at *5. Here, Plaintiff also references President Clinton's signing statement, and he argues that the trial evidence shows Defendants' employees were aware of the Helms-Burton Act, the employees knew that all private real property in Cuba had been confiscated by the Communist Cuban government, and they believed that the hotels in question were built on confiscated property. Even if these points are true, they are too general to sufficiently notify Defendants that they "were trafficking in [Plaintiff's] property specifically, that [Plaintiff's] property was American property, or that the Castro regime had confiscated [Plaintiff's] property." *Id.* Title III's knowledge requirement would have

4

virtually no meaning if these were sufficient to put a defendant on notice, because notice could be presumed in virtually every case.

Plaintiff's cease-and-desist notices, however, yield a different result. In the notices, Plaintiff identifies himself and his family as "the rightful owners of Cayo Coco, Cuba"—an entire island—and informs Defendants of his "intent to commence a class action" due to Defendants' trafficking in Cayo Coco, which Plaintiff claims was confiscated by Cuba. Plaintiff's notices also identify the hotels by name—the Iberostar and the Accor. *See* Notices, No. 19-22620-CIV, ECF No. 116-17 (S.D. Fla. Jan. 4, 2021); Notices, No. 19-22621-CIV, ECF No. 77-17 (S.D. Fla. Jan. 4, 2021). Compare these with Del Valle's notices. Those identified Del Valle as the "rightful owner" of some "property located in Varadero" and warned that he "intend[ed] to sue" the defendants because they trafficked in this property, which was "confiscated by the Cuban government from the Del Valle family." *Del Valle, et al. v. TRIVAGO GMBH, et al.*, No. 19-22619-CIV, ECF No. 100-10 (S.D. Fla. April 6, 2023). Importantly, Del Valle's notices did "not identify what part of Varadero, a peninsula in Cuba, Del Valle claims is his." 2025 WL 1443951, at *5. Nor did they specify "which properties, if any, on [the defendants'] websites the Castro regime confiscated." *Id.*

Though relatively the same length as Del Valle's, Plaintiff's notices do not suffer from these deficiencies. That is important. While, like Del Valle, Plaintiff did not identify himself as a U.S. national in his notices—and the Eleventh Circuit took note of this (*see id.*)—this single shortfall is not enough for the Court to deem Plaintiff's notices inadequate considering the other crucial details they provide. Defendants thus had reason to know that they were trafficking in Plaintiff's confiscated property by continuing to facilitate bookings at the three hotels in question as of August 7, 2019, the date Defendants received Plaintiff's notices.

*Del Valle* emphasizes that "evidence" like "detailed sworn statements" or "corroborating documents" is needed to meet the statute's *mens rea* requirement for trafficking under Title III. But the Court did not expressly hold that a cease-and-desist notice can never do so on its own. *See* 2025 WL 1443951, at *6. In fact, rather than outright rejecting Del Valle's notices as insufficiently corroborated by such evidence, the Court evaluated their specificity. *See id.* at *5. And it was their lack of specificity that led the Court to conclude they "were [not] enough." *Id.*

If *Del Valle* is read to always require Title III plaintiffs to present sworn or documentary evidence to put a defendant on notice, it would be nearly impossible for these plaintiffs to recover; this would be especially difficult considering the challenges with obtaining records in Cuba. Interestingly, in its discussion regarding what Title III's *mens rea* requires, the panel cited *Fernandez v. Seaboard Marine LTD.* 135 F.4th 939 (11th Cir. 2025), a published case, as "an example of the proof we typically see a plaintiff present to establish property ownership in a Helms-Burton Act case." *Del Valle*, 2025 WL 1443951, at *6. But *Fernandez* is not as helpful as *Del Valle* suggests. When prompted to evaluate the sufficiency of the plaintiff's cease-and-desist notices for purposes of establishing the defendant's knowledge under Title III at summary judgment, the *Fernandez* panel punted the issue to the jury. *See* 135 F.4th at 957 ("We need not decide what Seaboard must know or what its intentions must be in order to be liable under the Act because the letter is sufficient to create a genuine dispute of material fact under either construction."). Understandably, the *Del Valle* panel seemed chiefly concerned about plaintiffs who "hope to win a quick settlement to which they may not be entitled" from defendants who are rightfully averse to "the risk of the Helms-Burton Act's expansive liability." 2025 WL 1443951, at *6. But there are already mechanisms in place to deter plaintiffs from and punish them for bringing frivolous claims.

Moreover, as Plaintiff points out, reading Title III this way would create an obvious inconsistency. The statute provides treble damages where a defendant continues trafficking more than 30 days after receiving the plaintiff's cease-and-desist notice. 22 U.S.C. § 6082(a)(3)(B), (a)(3)(C)(ii). But what must this notice include? Congress requires only that they "be in writing," "be posted by certified mail or personally delivered to the person," and contain (1) "a statement of intention to commence the action under this section or to join the person as a defendant (as the case may be), together with the reasons therefor;" (2) "a demand that the unlawful trafficking in the claimant's property cease immediately;" and (3) the Federal Register's summary of Title III's provisions. *Id.* § 6082(a)(3)(D). There is no statutory requirement that a plaintiff submit evidence with this notice. It would thus make no sense to require more from a plaintiff to prove liability under the statute than to recover treble damages.

## II. **OWNERSHIP AND INHERITANCE**

Plaintiff presented sufficient evidence to prove that he lawfully inherited an interest in the island of Cayo Coco, Cuba. The Court will not disturb the jury's finding on that issue. Nor will the Court override the jury's finding that Plaintiff's ownership claim to Cayo Coco is 12.5%. The Court acknowledges Defendants' argument that Plaintiff's counsel did not produce a probate expert to help the jury decide between his two alternative scenarios—one in which Plaintiff owns 11.25% and the other in which he owns 12.5%—and instead "testified" that the jury should simply choose between the two and select 12.5% because Plaintiff's "position is 12.5" while "[Defendants are] saying it's 11.25." Trial Tr. Vol. 8 at 56:6–12. In the end, the Court instructed the jury on the applicable law and the parties presented the necessary documentary evidence for the jury to calculate the size of Plaintiff's claim.

### III. <u>CONFISCATION</u>

The Court finds that Plaintiff presented sufficient evidence that the property he inherited from his ancestors[3] was not public property and was indeed confiscated by the Cuban government. The jury heard testimony from both Cuban law experts and accepted Plaintiff's expert over Defendants' regarding the Law of Ports and the First and Second Agrarian Reform Acts.

### IV. <u>TRAFFICKING</u>

#### a. *Expedia Group, Inc.*

Plaintiff claimed that Expedia Group, Inc., a holding company, was liable for the acts of its codefendants Hotels.com GP, LLC, Hotels.com L.P., and Orbitz, LLC, as well as non-party Expedia, Inc. (a/k/a Expedia-WA).

In Plaintiff's view, the evidence presented to the jury was sufficient to conclude that Expedia Group, Inc. "engage[d] in a commercial activity using or otherwise benefiting from confiscated property," and "caus[ed], direct[ed], participat[ed] in, or profit[ed] from" trafficking by its subsidiary Expedia-WA. 22 U.S.C. § 6023(13)(A)(ii), (iii). The evidence that Plaintiff points to is Expedia Group's development and rollout across all of its major branded sites of a "reason-for-travel" dropdown menu, that Expedia Group applied for and obtained a license from the United States Office of Foreign Asset Control to conduct business in Cuba, Expedia Group's leasing of a Miami office space for its Cuba team, its direct communications with hotel partners in Cuba about business strategy and operations in Cuba, and that Expedia Group generated revenue from the bookings facilitated by its subsidiaries.

The Court is not persuaded. Indeed, Expedia Group's SEC Form 10-K filing—a consolidated statement on which Plaintiff primarily relies—reflects only the performance of all

---

[3] *See* Defendants' Family Chart, attached to this order.

8

members of the Expedia Group corporate family. As Defendants point out, Plaintiff does not contend with the fact that "Expedia Group" is used to refer to the entire corporate family, rather than to Expedia Group, Inc. itself. *See* PLA00079 at 1. There is no evidence that Expedia Group facilitated any bookings whatsoever at any of the three hotels in question. Rather, it was non-party Expedia-WA which made the bookings. Moreover, the Form 10-K does not specifically reflect that Expedia Group, Inc. leased the Miami office space. *See id.* at 27.

Even still, Plaintiff fails to plausibly explain how this evidence supports a finding that Expedia Group, Inc. trafficked in his property. Communicating with hotels in Cuba, leasing office space for a group of employees dedicated to overseeing business in Cuba, and developing a drop-down menu for guests to indicate which authorized exception applies for their Cuba travel is not unlawful, so long as companies do not run afoul of applicable rules and regulations. Similarly, the fact that Expedia Group applied to the United States Office of Foreign Asset Control for a license to conduct business in Cuba is not enough. At bottom, the evidence does not support the jury's verdict that Expedia Group, Inc. trafficked in Plaintiff's property.

The Court finds that Expedia Group, Inc., as the parent holding company, cannot be held liable for the acts of non-party Expedia-WA, much less the acts of the other subsidiaries.[4] Therefore, judgment as a matter of law will be granted in favor of Defendant Expedia Group, Inc. The Court previously denied Defendant Expedia Group, Inc.'s motion for summary judgment. However, after considering the evidence at trial, Plaintiff did not show that Expedia Group, Inc. exercised sufficient control over any of these other entities. Counsel for Plaintiff did not seek an agency instruction, and the Court did not give one. The Court finds that Expedia

---

[4] The Court also notes that in the August 2019 notices that Plaintiff attached to his operative complaint, Plaintiff did not send notice to Expedia Group, Inc., a Delaware corporation with its registered agent in Delaware. Instead, he sent notice to Expedia, Inc. at a Bellevue, Washington address. *See* No. 19-22620-CIV, ECF No. 116-17; No. 19-22621-CIV, ECF No. 77-17.

9

Group, Inc., as the parent holding company, cannot be held liable for the conduct of Expedia-WA, which was not sued.

### b. *Orbitz, LLC and Hotels.com*

The Court considered the Chart of Booking Dates submitted by Defendants, and the handwritten notes added by Plaintiff's counsel. Plaintiff did not object to the dates Defendants provided in this chart, and Defendants did not object to Plaintiff's handwritten notes. A copy of Defendants' chart and a copy with Plaintiff's counsel's handwritten notes are attached to this order. Defendants treated the two Hotels.com entities as one party for purposes of this chart, and Plaintiff did not object to this. The chart contains the names of the hotels—Pullman, Mojito, and Colonial—on Cayo Coco, with the dates of bookings, checkouts, and check-ins (handwritten by Plaintiff's counsel).

The Hotels.com entities and Orbitz, LLC received a cease-and-desist notice from Plaintiff on August 7, 2019. As the Court explained above, the date Defendants received Plaintiff's notices determines when Defendants' knowing and intentional trafficking began. Looking to Defendants' chart, it is clear that the evidence does not support liability as to Orbitz, LLC. Orbitz did not make any bookings at the Colonial. For bookings Orbitz facilitated at the Pullman and Mojito, the last bookings were made and the last guest checked out *before* Orbitz received Plaintiff's notice. Thus, regardless of whether the trafficking date is the booking date or the checkout date, Orbitz did not knowingly and intentionally traffic within the meaning of Title III. The Court therefore grants judgment as a matter of law in favor of Defendant Orbitz, LLC.

The evidence for the Hotels.com entities is not as straightforward. If the Court decides that the checkout date is the trafficking date, then the evidence establishes that the Hotels.com entities knowingly and intentionally trafficked in Plaintiff's property with respect to the Pullman

and Colonial hotels.[5] The last guest to check out of the Pullman and Colonial did so on September 30, 2019 and December 10, 2019, respectively. Hotels.com's liability is supported by the evidence under this theory because these checkouts occurred *after* they received Plaintiff's August 2019 notice. On the other hand, if the Court decides that the booking date is the trafficking date, then judgment as a matter of law must be entered for the Hotels.com entities. This is because the Hotels.com entities' last booking date for each of the three hotels occurred in June 2019, *before* they received Plaintiff's notice.

Weighing the justifications for using the dates for either bookings or checkouts (or check-ins as provided by Plaintiff's counsel) as the trafficking dates, this Court concludes that the former is more appropriate. For one, it finds support in the statutory text. *See* 22 U.S.C. § 6023(13)(A)(i), (ii). Facilitating a hotel room booking at the Pullman, Mojito, or Colonial hotels fits neatly under "engag[ing] in a commercial activity using or otherwise benefiting from confiscated property," or "sell[ing], transfer[ring], distribut[ing], dispens[ing], broker[ing], manag[ing], or otherwise dispos[ing] of confiscated property." For another, it is the booking of hotel rooms on Cayo Coco that is the wrongful act. As a booking company, Hotels.com facilitated bookings at these three hotels. That is its function—to book hotel rooms. Even if Hotels.com did not realize revenue at the time of booking, it is *the booking* for which Hotels.com was eventually paid. This is the unlawful act. Perhaps the check-in or checkout dates would be more relevant if Plaintiff was instead suing the hotels themselves.

What is more, Plaintiff pointed to no evidence of Hotels.com GP, LLC's independent conduct. It is clear instead that Plaintiff seeks to hold Hotels.com GP, the general partner, liable for the actions of its limited partner, Hotels.com L.P. As Plaintiff concedes, the limited partner

---

[5] The last checkout date for the Mojito hotel was July 20, 2019, so, even under this theory, Hotels.com's bookings at this hotel were not knowing and intentional trafficking.

11

is the entity that "listed and facilitated the booking of hotel stays on Cayo Coco through its online platform." Opp. Br., No. 19-22620-CIV, ECF 523 at 23. The Court agrees that it would thus be improper to hold these parties individually liable for separate identical damage awards.

In light of the foregoing, the Court grants judgment as a matter of law in favor of the Hotels.com entities.

### V.  DAMAGES

The Helms-Burton Act provides for statutory damages as "the fair market value of that property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater." 22 U.S.C. § 6082(a)(1)(A)(i)(III). Expert testimony was presented by both sides. The Court acknowledged that calculating the fair market value in a country like Cuba, where the economy is exclusively controlled by the Communist government, is a difficult task. But all Helms-Burton Act cases will face this. Nevertheless, because the Court's judgments as a matter of law render the verdicts void against all Defendants, the Court need not analyze whether the evidence was sufficient to support Plaintiff's expert's damage calculation. For obvious reasons, the Court also need not address treble damages.

### VI.  CONCLUSION

A trial court's decision to set aside a jury's verdict should never be taken lightly, particularly in a case where great lawyers on both sides have well represented their clients admirably, with passion but respect, over a long period of time. Much time and money has been spent by the parties and counsel as the Court struggled with the multitude of legal issues, which may well be decided differently by the wiser Court of Appeals. Perhaps, now we understand better the decisions of our United States Presidents, both Democrat and Republican, to suspend provisionally Title III of the Cuban Liberty and Democratic Solidarity Act. There may be little

comfort for either side of this first-ever Helms-Burton Act jury trial in President Trump's decision in his first term <u>not</u> to defer any longer the bipartisan Congressional intent in 1996, after the shooting of the airplanes used to save Cuban refugees fleeing the island suffering a Communist dictatorship for the last 65 years. After all, even without a money judgment in favor of Plaintiff, the intent of the Helms-Burton Act was indeed followed. Those parties who are notified that their actions violate the Act must stop their activity. Defendants did cease bookings with the hotels located on Plaintiff's inherited property within the 30 days provided by the Act and thus complied with the purpose of the law passed by Congress and signed by President Clinton. Therefore, the Court sets aside the jury verdicts and enters judgments in favor of Defendants Expedia Group, Inc., Hotels.com GP, LLC, Hotels.com L.P., and Orbitz, LLC.

DONE AND ORDERED in Chambers at Miami, Florida, this 5th of September 2025.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record